196 N.J. Super. 428 (1984)
483 A.2d 224
MICHAEL J. MATTHEWS, PLAINTIFF,
v.
ADELAIDE DEANE AND JAMES W. MASLAND III, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided March 13, 1984.
*430 Edwin J. Jacobs Jr. for plaintiff (Tort, Jacobs, Gross & Todd, attorneys).
William Cappuccio for defendant Adelaide Deane.
Robert Paschon for defendant James W. Masland III (Paschon, Feurey & Kotzas, attorneys; Bruce C. Rosetto, on the brief).
GRUCCIO, A.J.S.C.
Plaintiff, Matthews was elected mayor of Atlantic City on June 15, 1982 and has served in that capacity from July 1, 1982 up until the present time. In August 1983 Matthews became the target of a recall petition filed by defendant, Masland on behalf of the Committee to Make Mayor-Council Government Work (hereinafter referred to as the recall committee). The filing of said petition spawned extensive litigation involving several parties and raising various issues of first impression.
The initial suit was filed on September 7, 1983 by one Kevin R. Baker, a circulator of recall petitions who claimed that defendant, Deane, city clerk of Atlantic City, improperly refused to review petitions which he submitted. An order to show cause was executed by the court in this matter. September 7 was also the day on which Deane issued a certification that her office had determined that 6836 valid signatures had been *431 submitted seeking the recall of Matthews, 579 signatures in excess of the 6257 needed to compel the setting of a date for a recall election.
On September 8 Deane notified Matthews of the results of the certification review process, pursuant to N.J.S.A. 40:69A-171. Matthews filed a complaint in lieu of prerogative writs against Deane on that same day alleging irregularities in the procedures employed by the recall committee, failure by Deane to discover these irregularities, and improper resort to the recall process. This court executed an order to show cause submitted by Matthews, made it returnable on September 13 and continued the Baker matter until that same date and time.
Defendant Masland filed a complaint and motion to intervene, said motion being granted at the hearing on September 13. The following actions resulted from the September 13 hearing: the Baker and Matthews actions were consolidated, the intervention motion of Matthews with respect to the Baker matter was granted, Matthews' application for a preliminary injunction was granted enjoining Deane from setting a recall election date until September 19 and until further order of the court, and finally, a hearing was scheduled for September 19 to consider Matthews' motion for summary judgment on two issues. The first issue concerned the validity of signatures collected prior to Matthews' having completed one year in office and the second concerned the validity of signatures of individuals who registered to vote between the date of the initial filing of the recall petition and the date for submitting additional petition signatures (the cure period). A pretrial order was entered which, among other things, scheduled the trial to begin October 3, estimated to last a minimum of four weeks.
This court issued a formal opinion on September 21 finding that those signatures collected prior to the completion of Matthews' first year in office and those collected during the cure period were valid signatures to be considered in Deane's examination of the petition. Baker v. Deane, 196 N.J. Super. 416 *432 Judgment was entered in accordance with the opinion and certified as a final judgment pursuant to R. 4:42. The judgment entered was stayed and all previously issued injunctions were continued pending appeal. Masland filed an appeal from the order continuing the injunctions and Matthews appealed the judgment entered on September 21, seeking a continuation of restraints preventing Deane from setting an election date. The Appellate Division refused to consider challenges to the September 21 opinion and remanded the matter to this court for trial on an expedited basis. The Appellate court also restrained Deane from setting an election date pending completion of the trial. The trial commenced in October and continued into December, having been interrupted and delayed several times for various reasons.
On or about November 8 a second petition was circulated seeking support for the recall of Matthews. This second petition was promoted and circulated by the same individuals who circulated the first petition and was filed with Deane on December 2. This same date Matthews filed a complaint and a summary judgment motion with this court seeking a determination that the existence of one certified recall petition precluded the filing of a second recall petition. On December 5 this court ordered Deane to begin the review process on the second set of petitions and scheduled a show-cause hearing for December 8. The December 8 hearing was continued as a result of an unsuccessful attempt by Masland to have the case removed to federal court. Deane issued a certificate of insufficiency with respect to the second petition on December 12 with this court subsequently ruling that the complaint and motion of Matthews were premature. Matthews filed an appeal which was denied for essentially the same reasons given by the trial court. On December 22 the recall committee filed additional signature papers amending the second petition. Deane ultimately certified the petition as insufficient, thereby extinguishing the second recall effort. Matthews' appeal from this court's initial *433 denial of his request to restrain Deane from reviewing the second petition is still pending.
On January 13, 1984 Masland filed a complaint and order to show cause seeking an order of this court compelling Deane to: 1.) review petitions circulated by one Jaleel Muhammad, 2.) review other alleged errors in the certification process and 3.) issue a new certification after reviewing those petitions and signatures. An answer was filed and a trial held on these issues on January 23, with the Attorney General's office representing the Atlantic County Board of Elections. At that time it was determined that Jaleel Muhammad was a properly registered voter at the time he submitted recall petitions and that valid signatures on his petitions were to be counted. The result was that there were at least 13 signatures in excess of the amount necessary to have the issue placed on a ballot and Deane was ordered to proceed with her ministerial duties. Matthews' motion to intervene in the hearing was denied on the ground that he was not a necessary party to the litigation.
On February 1 the court entertained several motions to extend the time for setting an election date, a renewal of the motion by Matthews to intervene in the January proceeding, and a renewal of the motion by Matthews for summary judgment regarding the issue of the existence of two certified recall petitions. At that time, an election date of March 13, 1984 was set by the court, the motion to intervene was denied on the ground that the January 23 hearing resulted in a final judgment. Decision on the motion for summary judgment was reserved and is the focus of this opinion.
At oral argument, counsel for Matthews indicated that Matthews had no preference as to which petition should be eliminated, he only asserted that two certified recall petitions cannot coexist. With this assertion the court agrees. For the reasons set forth herein, the court finds that it is not possible for them to coexist.
*434 The provisions dealing with recall elections are contained in N.J.S.A. 40:69A-168 to -178. While the statute provides for the filing and receiving of recall petitions, nowhere does it provide that the filing of one petition precludes the filing of an independent petition seeking the same result. Matthews relies on the language of N.J.S.A. 40:69A-170 and -171 to support his contention that a second recall petition can't be filed once one petition has been certified. Section 170 provides that the filing of an insufficient petition does not prevent the filing of a subsequent petition. Matthews contends that there is a negative implication in § 170 to the effect that the filing of a sufficient petition prevents the filing of a second petition. To that same end, Matthews submits that § 171, which outlines the city clerk's duties once a recall petition has been certified to be sufficient, does not instruct the clerk to accept additional petitions as one of those duties. The absence of such a provision is not the result of a clear legislative determination that only one petition can be filed and certified at a given time. It would seem that the present factual situation was never contemplated by the Legislature.
An examination of the recall statute reveals that the Legislature attempted to provide procedures which would deal with any contingency which arose during the recall process. The recall statute provides specifically for: the time for filing a recall petition, N.J.S.A. 40:69A-168; the requirements for a petition to be sufficient, N.J.S.A. 40:69A-169; the collection of signatures and review by the municipal clerk N.J.S.A. 40:69A-170; the procedures to be followed once a petition has been certified as sufficient, N.J.S.A. 40:69A-171; the form of the ballot, N.J.S.A. 40:69A-172 and 174; the recall of more than one official, N.J.S.A. 40:69A-173; the selection of candidates, N.J.S.A. 40:69A-175; the publication of election information, N.J.S.A. 40:69A-176; the determination of the results of the election, N.J.S.A. 40:69A-177; and the effect of resignation of the incumbent, N.J.S.A. 40:69A-178. The Legislature intended that the procedures which it provided would be followed. If a *435 petition is certified as sufficient, the Legislature intended that an election be held within 60 to 90 days from the date of filing. N.J.S.A. 40:69A-171. The Legislature did not contemplate the effects of a legal battle such as that which currently clouds the validity of the first recall petition, filed in August 1983. Had no legal challenge been instituted with respect to the first petition, a recall election would have been held no later than November 8, 1983. As a result of the length of litigation challenging the first petition, the second recall petition was circulated and submitted.
The inherent purpose of the recall statute is to provide increased accountability of city officials to their constituents. It would be a subversion of the legislative intention to hold that the mere existence of a certified recall petition which has been mired in litigation in excess of four months can effectively prohibit citizens from a subsequent effort to reassert their position. A public official subject to recall would be encouraged to delay and extend litigation solely for the purpose of preventing his recall. This could not have been intended by the Legislature.
Having determined that a second petition can be filed while one is pending, this court finds that at the moment either of them is certified and an election date set, the other petition dies. This conclusion is inescapable. Both petitions seek the same goal, the setting of a recall election date. Once that goal is attained, there is no need to pursue other avenues aimed at achieving the same goal. The setting of an election date with respect to the second recall petition renders the first petition moot. There is nothing to be gained by proceeding with a determination of the validity of the first petition, a petition whose sufficiency is already in serious doubt given the glaring procedural deficiencies which have been exposed at trial.
From the evidence and testimony presented at trial thus far, it appears that all but an inconsequential few of the signatures collected are genuine and represent a good faith effort on the *436 part of concerned citizens to support the recall movement. The testimony reveals that the statutory mandates have not been complied with procedurally. Many of these procedures have been ignored or relaxed by the recall committee, thereby rendering invalid otherwise properly collected signatures.
The attached findings of fact (see appendix) reveal that the notarization process employed with respect to the first petition accounts for the majority of deficiencies. The inconsistencies and contradictions in the testimony of the notaries and circulators cast doubt on the sufficiency of the entire process. The shortcomings of the process are illustrated by a review of the conflicting testimony.
One notary testified that each time he notarized a petition he asked the circulator if she or he was in fact the circulator, if she or he saw everyone sign the petition, if she or he would read the affidavit and to state whether or not it was true, and finally he would ask the circulator to sign the affidavit in his presence. He never asked circulators if they would swear or take an oath as to the validity of the signatures. At least six circulators testified that they never gave petitions to this notary, yet his name appears on their petitions as notary. One circulator testified that she was required to raise her hand, a procedure this notary never followed and another circulator claimed that she watched this notary sign his name to her petition although the petition itself indicates that a signature stamp was used. It seems clear that petition pages containing a minimum of 154 signatures were improperly notarized by this notary alone.
Another notary testified that the notarization procedure which he employed consisted of asking the circulators if they read the jurat and if they believed it to be true. He would then instruct the circulators to sign the jurat, after which he would notarize the petitions in their presence. He never administered a formal oath. In addition, there has been testimony which contradicts the process which this notary has described.
*437 In addition to the testimony of the two notaries discussed above, several other notaries have testified that they used procedures which required circulators to do no more than read the jurat on the petition page and sign. At least one notary testified that no words at all were ever exchanged with circulators. There has been very little evidence presented to suggest that any of the jurats were not signed or were not understood by circulators. However, the administering of a formal oath does not appear to have occurred with respect to many, if any, of the petition pages.
The terminology of the jurat on each petition page would satisfy the oath requirement if administered by a notary. When executed in an ex parte manner by the circulator the jurat is not sufficient to satisfy the oath requirement of N.J.S.A. 40:69A-170. The execution of the jurat without the oath is roughly equivalent to the certification in lieu of oath or affidavit permitted under R. 1:4-4(b).
The recall statute specifically requires each circulator to "take an oath before an officer competent to administer oaths," with no provision for the use of a certification in lieu of oath or affidavit as permitted under the rules of court. Asking questions related to the circulation of petitions, absent express reference to the fact that an oath is being administered, is not sufficient to satisfy the statutory oath requirement. This court is well aware of the recent trend toward liberalization of the oath requirement in many states which includes the elimination of the requirement of raising the right hand and the use of a bible. However, the administration of an oath still requires certain acts by the notary which involve having an individual "swear" or "affirm" as to the truthfulness of the statements made. An example of the function of a notary which adheres to the statute is revealed in the words "sworn to and subscribed before me" which appear above a notary's seal and signature on a simple affidavit.
*438 For the foregoing reasons, this court concludes that there are many deficiencies which place the validity of the first recall petition in serious doubt. Furthermore, the sufficiency or insufficiency of the first petition is no longer of major import given the determination contained herein that the first recall petition ceased to exist at the moment the second recall petition was certified and an election date set. Accordingly, the case of Baker, et als. v. Deane, et al. and Matthews v. Deane, Masland III, et al. v. Matthews, etc. v. Deane, etc. Docket Nos. L-55894-83E P.W. and L-56339-83E P.W. is hereby dismissed with prejudice. 196 N.J. Super. 416.
While the court was formalizing this opinion, plaintiff filed summary judgment motions which sought to enjoin the March 13 election. The city clerk had certified the second recall petition and subsequently changed the number of signatures certified at the request of Matthews and his counsel and without advice or knowledge of her own independent counsel. This was done without notice to, or consultation with, the recall petitioners and without any apparent authority in law for the clerk to change a petition once it has been certified. Only the court can review and alter the number of signatures contained in a petition after the clerk's certification. Any application to have the petition reviewed must be to the court once the clerk certifies the petition. Plaintiff's motions made herein to enjoin the election were denied since Matthews alleged that certain signatures should be delected and the recall movement alleged that certain signatures should be added. Disposition of those factual issues requires a plenary hearing. Matthews' motions for leave to appeal have been denied by the Appellate Division and the Supreme Court.
The question of mootness regarding the issues addressed in this opinion as a result of the setting of the March 13 election date has not been raised or addressed.

*439 APPENDIX
From the evidence presented thus far, the court finds that the following deficiencies and irregularities occurred with respect to the first recall petition:
-Arnold Bogerty delivered two petition pages to Pierre Hollingsworth, and signed the jurat in his presence, but did not observe Hollingsworth notorize the pages and did not exchange any words with Hollingsworth;
-Leonoidas Clark delivered two petition pages to George Savage. Pierre Hollingsworth appears as the notary on both pages;
-Georgianna Davis delivered her petition page to Rosalind Nance in the presence of Stephen Hazzard. She never spoke with Hazzard and has no idea when he notorized her page;
-Irma Dean delivered three petition pages to Linda Steele. Deane read the jurat, said she understood it and signed in Steele's presence. Nothing further was said or done in her presence;
-Andrew Garrett circulated 26 petition pages and testified that at one point the notary stopped questioning him when he delivered pages;
-Eugene Gaynor received his petition from Michael Johnson and returned it to him unnotarized. He does not know how the notary seal of his wife, Myra Gaynor, was put on it;
-Myra Gaynor notorized 16 petition pages accounting for 75 valid signatures. She exchanged no words with any petition circulators;
-Edythe Green circulated one petition page and submitted it to James Masland III. There was no exchange of words between her and Masland although she testified that she had read the affidavit and understood what it meant;
-Joseph Greenidge notarized a recall petition page for Gladys Callendar. No words were exchanged between the two;
-Seth Grossman circulated two pages of the recall petition. He stated he was not asked any questions when he submitted the petitions but he orally stated that he understood what he was doing and believed the petitions to be true;
-Sylvia Hampton turned in four recall petition pages. Three of the four she turned into James Masland III, the fourth she gave to Rosalind Nance in the presence of Masland. Hampton testified that Nance asked her to read questions regarding the fourth petition page;
-John Harvey circulated nine recall petition pages and submitted them to Linda Steele. Pierre Hollingsworth's signature appears as the notary on four of those nine pages;
-Stephen Hazzard notorized 692 petition pages accounting for more than 4000 valid signatures. He testified that his notarization process consisted of asking the circulators if they read and understood the jurat and if they believed it to be true. He then instructed them to sign and stated that he notarized the petitions in their presence;
-Pierre Hollingsworth is a notary who notarized petition pages during the recall process. Hollingsworth testified that his procedure was to ask circulators if *440 they read the jurat, if they were in fact the circulator, and if they would sign the jurat in his presence;
-Michael Hurd circulated 11 recall petition pages and stated that he was not asked any questions when he submitted them;
-Odell Lee circulated 4 recall petitions and submitted them to George Savage. He cannot explain how the notary of Pierre Hollingsworth appears on each;
-Gilbert Livingston circulated 22 recall petition pages. One page bears the notary of Pierre Hollingsworth although Livingston cannot explain how Hollingsworth's notary appears on his petition page. As to the other 21 pages Livingston stated that the notaries asked him to read the jurat, if he understood it, and if he would sign it. He did not observe any notarization take place;
-James Masland Jr. circulated one petition page and was asked no questions when he had it notarized by his son, James Masland III;
-James Masland III notarized petitions for the recall process. Masland stated that when he notarized petitions he would ask the circulators, if he/she were in fact the circulator, if he/she saw everyone sign the petition, if he/she read the jurat, if it was true, and if the signators signed in his/her presence;
-Ruth McQueen circulated four recall petition pages submitting them to Stephen Hazzard. Three of the petitions bear the notary of Stephen Hazzard and one bears the notary of James Masland III. McQueen stated that the only words exchanged between her and Hazzard were when Hazzard said, "Thank you";
-Johnny Mebane said his recall petition pages were notarized by Myra Gaynor and Linda Steele in the recall office. Gaynor has testified that she only notarized petitions in an automobile and Linda Steele testified that on the date that Mebane claimed to have his petition notarized at the recall office she was in church notarizing petitions;
-Noah Moore testified that he and his wife signed a recall petition which was picked up by a black male and notarized by James Masland III although Moore does not know how the notary of Masland was placed on his petition page;
-Isaac Nicholson Sr., circulated one recall petition page but does not remember Pierre Hollingsworth notarizing that page;
-Coreen Picles circulated two recall petition pages and delivered them to James Masland III and Pierre Hollingsworth with whom she exchanged no words;
-Sylvia Powell circulated one petition page which bears the notary of Steven Hazzard. Powell is unaware of how the notary of Hazzard was placed on her petition page;
-Darryl Ragsdale was both a notary and a circulator. He notarized petition pages which accounted for 63 valid signatures and circulated petition pages which accounted for 85 valid signatures. With respect to the petitions he circulated he stated he did not know why he should have to be sworn since he himself was a notary although the notaries for his petitions all asked him if he understood the affidavit and if he would sign it;
-Edna Rosborough circulated one recall petition page and stated that she was not sure she was under oath when she submitted it;

*441 -Faroog Salaam circulated one recall petition page which bears the notary of Darryl Ragsdale. Salaam stated that he knows Darryl Ragsdale but did not submit the petition to him, he submitted it to Barbara Woodall;
-Linda Steele testified that when she notarized petitions for John Harvey she only asked him if he read and understood the affidavit the first time. Steele notarized five petitions for Harvey;
-Linson Tolbert circulated two recall petition pages but does not know how the notary of Pierre Hollingsworth came to be placed on his petitions. Tolbert testified that he submitted all his petitions to Councilman John Whittington.
Virtually all of the signatures submitted would be valid if not for the procedural errors outlined above. The only other errors were the relatively few situations in which one person signed the name of another person.