708 A.2d 401

ALAN J. CORNBLATT, P.A., PLAINTIFF–RESPONDENT,
v. AILEEN BAROW, DEFENDANT–APPELLANT.

Argued November 3, 1997—Decided March 19, 1998.

222

*Hilton L. Stein,* argued the cause for appellant (*Mr. Stein* and *Wilbert & Montenegro,* attorneys; *Mr. Stein* and *Diane M. Acciavatti,* on the briefs).

*Mark H. Sobel,* argued the cause for respondent (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys; *Richard L. Hertzberg,* on the brief).

*Abbott S. Brown,* argued the cause for *amici curiae* The New Jersey State Bar Association, The Association of Trial Lawyers of America–New Jersey and The Trial Attorneys of New Jersey (*Brown & Gold,* attorneys; *Mr. Brown* and *William L. Gold,* on the brief).

224

*Christopher J. Carey,* submitted a brief on behalf of *amicus curiae* Tompkins, McGuire & Wachenfeld (*Tompkins, McGuire & Wachenfeld,* attorneys; *Mr. Carey, Marianne M. DeMarco* and *Carol G. D'Alessandro,* on the brief).

*John F. Kearney, III,* on behalf of *amicus curiae* The Burlington County Bar Association, relied upon the brief submitted by amici curiae The New Jersey State Bar Association, The Association of Trial Lawyers of America–New Jersey and The Trial Attorneys of New Jersey.

*Robert B. Hille* on behalf of *amicus curiae* The Bergen County Bar Association, relied upon the brief submitted by *amici curiae* The New Jersey State Bar Association, The Association of Trial Lawyers of America–New Jersey and The Trial Attorneys of New Jersey (*Contant, Scherby & Atkins,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In 1995, the Legislature enacted a statute, the Affidavit of Merit Bill, that imposed requirements for initiating and maintaining certain professional malpractice actions. *L.* 1995, *c.* 139 (codified at *N.J.S.A.* 2A:53A–26 to –29). The statute by its terms applies to "causes of action which occur" on or after the effective date of enactment. A key provision of the statute requires the submission of an affidavit of merit within sixty days of the filing of the answer to the complaint. This case presents important issues concerning the application of the statute. These include the scope of the requirements of the affidavit of merit, whether a dismissal for failure to comply with those requirements is with prejudice, and whether the statute applies to cases filed on or after its effective date when the underlying facts constituting the alleged malpractice have occurred prior thereto.

I

In November 1989, defendant Aileen Barow retained plaintiff Alan Cornblatt, an attorney, to represent her in a divorce action.

Barow claims that Cornblatt portrayed himself as completely competent in matrimonial matters, especially in the settlement of cases. Barow alleges that in the course of that representation Cornblatt required her to deal with one of his associates rather than with Cornblatt. Eventually, Barow grew frustrated with having his case handled by an associate and she confronted Cornblatt about it. She became "disillusioned" with Cornblatt when he allegedly told her that, contrary to his earlier representations, he really was better equipped to try rather than to settle matrimonial cases.

Barow's matrimonial case turned out to be very complex and ultimately required a lengthy trial. At the conclusion of the case Cornblatt billed Barow $218,004.47 for his services. Barow elected to submit the fee to the District Fee Arbitration Committee (Committee). R. 1:20A-1 to -6. Barow retained attorney Michele Donato to represent her during the fee dispute. On September 14, 1995, after a three day hearing on the matter, the Committee found that Cornblatt engaged in duplication of billing in the amount of $5,475.25 and reduced the bill by that amount.

Barow had previously paid $40,817.60, so the remaining amount she owed Cornblatt was $171,711.62. Barow subsequently appealed the Committee's decision to the Disciplinary Review Board on December 13, 1995; the Board dismissed the appeal on April 16, 1996.

On November 13, 1995, when Barow had not paid the fee within thirty days, Cornblatt filed a complaint in the Law Division against Barow to recover the amount owed. Barow filed her answer on January 3, 1996. The answer included a counterclaim alleging that Cornblatt breached his contract with her by failing to carry out his duties and render services in a reasonable manner. Specifically, Barow claimed that Cornblatt negligently delayed the case, did not settle the matter, thereby forcing a trial, and charged an excessive fee by prolonging his representation. Cornblatt filed

his answer to the counterclaim on February 5, 1996. In his answer, Cornblatt demanded that Barow submit an affidavit of merit within sixty days as required by the Affidavit of Merit Bill. *N.J.S.A.* 2A:53A–27. Subsequently, on February 13, 1996, the trial court entered a Differentiated Case Management Scheduling Order, specifically requiring Barow to produce an expert affidavit by April 5, 1996.

Defendant Barow did not comply, and on April 24, 1996, plaintiff moved to dismiss defendant's counterclaim. Because the Disciplinary Review Board had by then dismissed defendant's appeal of the arbitration award, plaintiff also moved for summary judgment on his complaint for his fee. On May 1, 1996, defendant cross-moved for an extension of the expert affidavit filing period pursuant to *N.J.S.A.* 2A:53A–27, which provides for an extension of the sixty day period "upon a finding of good cause." Alternatively, defendant claimed the statute did not apply to her case because her claim was for breach of contract rather than for damages resulting from personal injury. The trial court denied the cross-motion.

On May 8, 1996, the trial court dismissed defendant's counterclaim with prejudice on the ground that defendant failed to comply with the mandatory requirement of the statute. Thereafter, the trial court decided to reconsider its rulings.

Defendant submitted a certification by Michele Donato dated May 16, 1996, stating that Cornblatt's performance during his representation of Barow was negligent. Defendant also submitted a certification stating that she had experienced difficulty obtaining an expert to submit the affidavit. Defendant later submitted another certification from Donato stating that Donato had no financial interest in the outcome of the case.

On June 7, 1996, the trial court dismissed the counterclaim. It ruled that even though the court considered the certification as timely filed, the statute required an affidavit.[1] Further, the court

---

[1] There was some dispute whether the trial court had previously ruled that Barow had filed the certification within the appropriate time frame. In its

found the substance of the certification to be deficient because the certifying expert did not state that Cornblatt had breached any standard of care, did not state that she had expertise in the area, and did not state that she had no financial interest in the matter.

Thereafter, in a written opinion dated July 30, 1996, the court dismissed Barow's counterclaim and entered summary judgment for Cornblatt on the fee claim. The court based the dismissal on the deficiencies in the certification and ruled that the dismissal was with prejudice because of the entire controversy doctrine. It also entered summary judgment for Cornblatt on the fee dispute based on the final arbitration decision by the Disciplinary Review Board.

Barow appealed the trial court's ruling only with respect to the dismissal of her counterclaim.

The Appellate Division affirmed the trial court, holding that the statute encompassed legal malpractice claims against attorneys, the certification in place of an affidavit did not satisfy the statute, the contents of the certification were deficient, and the dismissal with prejudice was appropriate. 303 *N.J.Super.* 81, 696 *A.2d* 65 (1997). In dicta, the court also concluded that the statute applies to all actions filed on or after the effective date of the statute regardless of when the underlying facts giving rise to the claims occurred. *Id.* at 92, 696 *A.2d* 65.

Barow petitioned this Court for certification. As *amici curiae*, the New Jersey State Bar Association, the Association of Trial Lawyers of America–New Jersey, and the Trial Attorneys of New Jersey (collectively, Bar Associations) urged the Court to stay all summary judgment motions based on the Appellate Division's opinion pending the Court's resolution of the matter. On September 16, 1997, the Court entered a stay of the Appellate Division's

---

second ruling, the trial court expressed no specific conclusion on the point. The Appellate Division indicated that the trial court dismissed the complaint for failure "to [file] within the prescribed time limit." 303 *N.J.Super.* 81, 85, 696 A.2d 65 (1997).

judgment pending resolution of the case. We granted certification on September 25, 1997. 151 *N.J.* 470, 700 *A*.2d 882.

## II

On June 29, 1995, Governor Whitman signed into law a package of five tort reform bills to "bring common sense and equity to the state's civil litigation system." Office of the Governor, *News Release* 1 (June 29, 1995). The package included the Joint–And–Several Liability Bill, *L.* 1995, *c.* 140 (amending *N.J.S.A.* 2A:15–5.2, –5.3); the Retail–Sellers' Liability Bill, *L.* 1995, *c.* 141 (codified at *N.J.S.A.* 2A:58C–8 to –9); the Punitive Damages Act, *L.* 1995, *c.* 142 (codified at *N.J.S.A.* 2A:15–5.9 to –5.17); the Health–Care Providers' Liability Bill, *L.* 1995, *c.* 143 (codified at *N.J.S.A.* 2A:58C–10 to –11); and, the subject of this action, the Affidavit of Merit Bill, *L.* 1995, *c.* 139 (codified at *N.J.S.A.* 2A:53A–26 to –29).

The Affidavit of Merit Bill defines "licensed person" to mean "any person who is licensed as: ... c. an attorney admitted to practice law in New Jersey." *N.J.S.A.* 2A:53A–26. The statute, as determined by the lower courts, clearly applies to attorney legal malpractice.

The statute contains several provisions defining the scope of the requirements for the submission of an affidavit of merit. These state:

**Affidavit required in certain actions against licensed persons**

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.

The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

[*N.J.S.A.* 2A:53A–27.]

**Sworn statement in place of affidavit permitted**

An affidavit shall not be required pursuant to [*N.J.S.A.* 2A:53A–27] if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

[*N.J.S.A.* 2A:53A–28.]

**Failure to provide affidavit or statement**

If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to [*N.J.S.A.* 2A:53A–27 or 2A:53A–28], it shall be deemed a failure to state a cause of action.

[*N.J.S.A.* 2A:53A–29.]

The Affidavit of Merit Bill also specifies the cases to which it applies. *L.* 1995, *c.* 139, § 5 states:

This act shall take effect immediately [June 29, 1995] and shall apply to causes of action which occur on or after the effective date of this act.

Based on this provision, the Appellate Division determined that the statute applied to all cases filed on or after its effective date. 303 *N.J.Super.* at 92, 696 *A.*2d 65. That determination, made *sua sponte* by the Appellate Division, has drawn the close attention of attorneys across New Jersey. The Bar Associations estimate that since the enactment of the Affidavit of Merit Bill, many malpractice actions have been filed that did not comply with statutory requirements and that a substantial number of currently pending malpractice cases would be dismissed under the statute so construed.

Because the Legislature did not use the phrase "causes of action which accrue" and used the word "occur" instead, the Appellate Division concluded that the statute applied to all cases filed on or after the effective date of the statute. *Ibid.* We disagree with the Appellate Division's analysis and hold that the statute does not apply to malpractice actions filed on or after the effective date of

the statute if the facts giving rise to the malpractice complaint occurred before that date.

■ Preliminarily, plaintiff argues that by not raising before the trial court any contention as to the applicability of the statute to her case, defendant has waived her right to claim the statute does not apply to her case.

■ An appellate court will consider matters not properly raised below only if the issue is one "of sufficient public concern." *State v. Churchdale Leasing, Inc.*, 115 *N.J.* 83, 100, 557 *A.*2d 277 (1989); *A. & B. Auto Stores of Jones Street, Inc. v. City of Newark*, 59 *N.J.* 5, 20, 279 *A.*2d 693 (1971). Even if the matter satisfies that test, the court will not consider the issue if the record before the court is not complete as to the newly-presented issue. *In re Board of Educ. of Boonton*, 99 *N.J.* 523, 536, 494 *A.*2d 279 (1985) (refusing to consider newly-raised issue with "an insufficient factual basis" in the record), *cert. denied sub nom, Kramer v. Public Employment Relations Comm'n*, 475 *U.S.* 1072, 106 *S.Ct.* 1388, 89 *L.Ed.*2d 613 (1986); *Nieder v. Royal Indemnity Ins. Co.*, 62 *N.J.* 229, 234–35, 300 *A.*2d 142 (1973) (remanding "for the orderly and complete presentation of the proofs" without passing on newly-raised issue).

The Bar Associations represent that if we were not to decide the issue, the Appellate Division's unreviewed ruling that the Affidavit of Merit Bill applies to all cases filed on or after its effective date would have a substantial impact on both malpractice plaintiffs and defendants as well as the attorneys who represent them. In *A. & B. Auto Stores, supra*, "[b]ecause of the public interest," the Court considered a contention that an amended statute applied to existing claims for relief, even though that issue had not been raised before the trial court. 59 *N.J.* at 20, 279 *A.*2d 693. Furthermore, in this case, unlike in *Nieder, supra*, and *In re Board of Educ., supra*, the factual record is sufficient and all parties have thoroughly briefed the issue. Thus, despite the matter having not been raised before the trial court or the Appellate Division, we reach the issue of whether the Affidavit of Merit Bill applies to

actions the underlying facts of which have occurred before the effective date of the statute.

That issue is one of statutory interpretation. We have "emphasized repeatedly that when interpreting a statute, our overriding goal must be to determine the Legislature's intent." *State, Dep't of Law & Pub. Safety v. Gonzalez*, 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995) (citing *Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995); *Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994); *Jacobitti v. Jacobitti*, 135 *N.J.* 571, 579, 641 *A.*2d 535 (1994); *Lesniak v. Budzash*, 133 *N.J.* 1, 8, 626 *A.*2d 1073 (1993)). Ordinarily, the language of the statute is the surest indicator of the Legislature's intent. *Strasenburgh v. Straubmuller*, 146 *N.J.* 527, 539, 683 *A.*2d 818 (1996) (citing *Medical Soc'y v. State, Dep't of Law & Pub. Safety*, 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990)). "If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." *State, Dep't of Law & Pub. Safety v. Bigham*, 119 *N.J.* 646, 651, 575 *A.*2d 868 (1990). However, if the language has more than one possible interpretation, the court will look beyond the language to determine the Legislature's intent. *Cedar Cove, Inc. v. Stanzione*, 122 *N.J.* 202, 211, 584 *A.*2d 784 (1991).

Thus, in the scheme of statutory construction, "the first step is the examination of the provisions of the legislative enactment to ascertain whether they are expressed in plain language that, in accordance with ordinary meaning, clearly and unambiguously yields only one interpretation." *Richard's Auto City, Inc. v. Director, Div. of Taxation*, 140 *N.J.* 523, 531, 659 *A.*2d 1360 (1995). When engaging in this analysis, if the Legislature has not provided otherwise, words are to be given " 'ordinary and well-understood meanings.' " *Manalapan Realty, L.P. v. Township Comm. of Manalapan*, 140 *N.J.* 366, 383–84, 658 *A.*2d 1230 (1995) (quoting *Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant*, 137 *N.J.* 136, 143–44, 644 *A.*2d 598 (1994); *Levin v. Township of Parsippany-Troy Hills*, 82 *N.J.* 174, 182, 411 *A.*2d 704 (1980)).

The language of the statute's effective date section bears repeating. *L.* 1995, *c.* 139, § 5 provides as follows: "This act shall take effect immediately [June 29, 1995] and shall apply to causes of action which occur on or after the effective date of this act." The controverted phrase "causes of action which occur" forms the basis of the dispute. Defendant interprets the phrase to be synonymous with "causes of action which accrue"; under that interpretation, the statute would not apply to her case because her alleged malpractice action accrued before the statute became effective. Plaintiff equates the phrase to "causes of action filed"; thus, under that interpretation, the statute would apply to defendant's case because she filed her action after the effective date of the statute.

A "cause of action" is the " 'fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief.' " *Levey v. Newark Beth Israel Hosp.*, 17 *N.J.Super.* 290, 293–94, 85 *A.*2d 827 (Cty.Ct.1952) (quoting 1 *Am.Jur., Actions,* p. 404); *accord Kingsley v. Wes Outdoor Adver. Co.,* 106 *N.J.Super.* 248, 252, 254 *A.*2d 824 (Dist.Ct.1969), *aff'd,* 55 *N.J.* 336, 262 *A.*2d 193 (1970); *Engel v. Gosper,* 71 *N.J.Super.* 573, 579, 177 *A.*2d 595 (Law Div.1962). That understanding comports with most basic definitions. *E.g., Granahan v. Celanese Corp. of America, Plastics Div.,* 3 *N.J.* 187, 191, 69 *A.*2d 572 (1949) (accepting the definition in *Ballentine's Law Dictionary,* p. 197, which states in part that "the facts which establish the existence of that right [in the plaintiff] and that delict [by the defendant which invades that right] constitute the cause of action."); *Black's Law Dictionary* 221 (6th ed.1990) (defining "cause of action" as "[t]he fact or facts which give a person a right to judicial redress or relief against another.... A situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf.") (citation omitted); 1 *Am.Jur.2d Actions* § 1 (1994) ("a set of facts which gives rise to a right to seek a remedy"); *id.* § 2 ("arises from a wrong done, and not from the character of the relief sought or the measure of compensa-

tion"); 1A *C.J.S. Actions* § 21 (1985) ("all the facts which together constitute plaintiff's right to maintain the action").

The statute's most controversial terminology is the word "occur." *Black's Law Dictionary* includes in its definition of "occur": "To happen; ... to appear; ... to take place; to arise." *Id.* at 1080. That definition is very similar to the dictionary definitions of "accrue," which include "to arise, to happen, to come into force or existence." *See id.* at 20–21; *see also* William C. Burton, *Legal Thesaurus* 6 (1980) (listing "occur" among the synonyms for "accrue"). Contrary to plaintiff's contention that "occur" means "filed," the dictionary definition of "file" is completely different from that of "occur." *See Black's Law Dictionary, supra,* at 628 (defining "file" as follows: "To lay away and arrange in order, pleadings, motions, instruments, and other papers for preservation and reference. To deposit in the custody or among the records of a court.").

Accepting those basic definitions as reflecting the well-understood and ordinary meaning to be ascribed to the statutory language, we determine that the phrase "causes of action which occur," in effect, imports as its meaning the happening of facts that constitute a legal basis for remedial relief.

The judicial use of the phrase "cause of action" in conjunction with the word "occur" bolsters that meaning. For example, in interpreting the Tort Claims Act's statement that the Act "applies only to claims that accrue on or after" the effective date, *N.J.S.A.* 59:12–3, the conjoined terms "cause of action" and "occur" have been considered to be synonymous with "cause of action" and "accrue." *See Kemp v. State,* 286 *N.J.Super.* 549, 558, 670 *A.*2d 31 (App.Div.1996) (stating that the Act "was expressly prospective in effect, applying to *causes of action that occurred* subsequent thereto") (emphasis added), *rev'd on other grounds,* 147 *N.J.* 294, 687 *A.*2d 715 (1997); *Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes,* 179 *N.J.Super.* 409, 419–20, 432 *A.*2d 525 (App.Div.1981) (same), *modified,* 90 *N.J.* 582, 449 *A.*2d 472 (1982); *Harrison v. Middlesex Water Co.,* 158 *N.J.Super.* 368, 378,

386 *A.*2d 405 (App.Div.1978), *rev'd on other grounds,* 80 *N.J.* 391, 403 *A.*2d 910 (1979); *Maule v. Conduit & Found. Corp.,* 124 *N.J.Super.* 488, 491, 307 *A.*2d 651 (Law Div.1973); *see also Wadsworth v. Department of Transp.,* 128 *Idaho* 439, 915 *P.*2d 1, 5 (1996) ("when property has been flooded periodically by actions of the defendant a new *cause of action occurs* upon the date of each periodic flooding"); *Franklin v. Cernovich,* 287 *Ill.App.*3d 776, 223 *Ill.Dec.* 154, 155, 679 *N.E.*2d 98, 99 (1997) (stating the issue as whether the statute "applies to *causes of action which occur* and accrue during minority").

Defendant claims that because the Legislature did not write "causes of actions filed," it intended a meaningful distinction between the terms "filed" and "occur," and, hence, intended the statute to apply only to cases "occurring" on or after its effective date. Using the same logic, plaintiff contends that the Legislature, familiar with the word "accrue," chose instead the word "occur," and meaning to distinguish those words, intended the statute to apply to all cases filed on or after the effective date.

 Two canons of statutory construction guide our interpretation: that "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded," *GE Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993); and that "[i]n discerning [the Legislature's] intent we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part," *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987).

In the tort reform package that included the Affidavit of Merit Bill, the four other bills also contained effective date clauses. Both the Joint–and–Several Liability Bill and the Punitive Damages Act apply to causes of action *"filed"* on or after the effective date. *See L.* 1995, *c.* 140, § 3; *L.* 1995, *c.* 142, § 11 (emphasis added). On the other hand, just like the Affidavit of Merit Bill, the Retail–Sellers' Liability Bill and the Health–Care Providers' Liability Bill apply to causes of action *"which occur"* on or after

the effective date. *L.* 1995, *c.* 141, § 3; *L.* 1995, *c.* 143, § 3 (emphasis added). The Legislature's selective use of different statutory language in related bills passed at the same time leads to a conclusion that the Legislature did not intend the words "occur" and "filed" to have the identical meaning.

Plaintiff refers to the Report to the Governor filed by Peter Verniero, then-Chief Counsel to the Governor as relevant to the interpretation of the legislation. That report, under the headings of the Health Care Providers Bill and the Retail Sellers Bill (as they were named at the time), stated that those bills "would be effective immediately and would apply to all actions commenced thereafter, *even if the harm occurred before the bill's effective date.*" Peter Verniero, Chief Counsel to the Governor, *Report to the Governor on the Subject of Tort Reform* 10, 11 (Sept. 13, 1994) (emphasis added). Both of those bills used the same wording as the Affidavit of Merit Bill—"causes of action which occur." Plaintiff argues that Chief Counsel's comments regarding the similarly worded bills should control our interpretation of the Affidavit of Merit Bill as well. However, the comments of Chief Counsel did not refer to the Affidavit of Merit Bill.

Moreover, other aspects of the legislative history do not support plaintiff's interpretation. That the Governor stated that the package of five tort reform bills will "revamp" the system, *News Release, supra,* at 1, is not informative. Both the Senate Commerce Committee Report and the Assembly Insurance Committee Report state that the Affidavit of Merit Bill applies "immediately." Senate Commerce Committee, Statement to Senate Bill No. S–1493 (Nov. 10, 1994) (hereinafter Senate Statement); Assembly Insurance Committee Statement, Senate Bill No. 1493—*L.* 1995, *c.* 139 (hereinafter Assembly Statement). However, a statute applying "immediately" could apply to all suits filed on or after its effective date as well as to all suits the underlying facts of which occurred on or after its effective date. Finally, both committees of the Legislature reported that the statute "establishes new procedures with regard to the *filing* of certain malpractice or

negligence actions." Senate Statement, *supra;* Assembly Statement, *supra* (emphasis added). Although the Appellate Division found that point to be important to the analysis, 303 *N.J.Super.* at 92, 696 *A.*2d 65, that statement does not persuasively support the conclusion that the statute applies to all cases filed after its effective date regardless of when their underlying facts arose.

In sum, the meaning of the Affidavit of Merit Bill calls for its application only to those cases the underlying legally-significant facts of which happen, arise, or take place on or after the effective date of the statute. Because defendant's cause of action—the underlying facts constituting the alleged malpractice—occurred before the effective date of the statute, the statute does not apply to defendant's counterclaim against plaintiff. Accordingly, the Appellate Division's affirmance of the dismissal of defendant's counterclaim because she did not comply with the statute is reversed.

### III

Also at issue in this case is whether the submission of a certification instead of an affidavit satisfies the requirements of the Affidavit of Merit Bill. The Appellate Division concluded that the submission of a certification did not comply with the statute because the statute specifically requires an "affidavit" and the Legislature did not provide for the submission of a certification. 303 *N.J.Super.* at 87, 696 *A.*2d 65. Neither *Rule* 1:4–4(b) nor the doctrine of substantial compliance saved defendant's certification. *Id.* at 87–88, 696 *A.*2d 65.

An affidavit is a "written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person [2] having authority to administer such oath or affirmation." *Black's Law*

---

[2] *N.J.S.A.* 41:2–1 identifies those who have the authority in New Jersey to administer the oath or affirmation for an affidavit.

*Dictionary, supra,* at 58. A certification, unlike an affidavit, is merely a "formal assertion in writing of some fact." *Black's Law Dictionary, supra,* at 227. A certification submitted to a New Jersey court must be dated and signed, with the following state- ment immediately preceding the signature: " 'I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.' " *R.* 1:4–4(b).

Whether a certification may satisfy the statutory affidavit re- quirement depends necessarily on the intent of the statute. We must consider whether the Legislature intended that pursuant to the statute the use of a certification could under any circum- stances be accepted in lieu of an affidavit and whether such a substitution is foreclosed by the plain language of the statute.

In certain contexts, a certification is acceptable as a substitute for an affidavit. *Rule* 1:4–4(b) states: "In lieu of the affidavit, oath or verification required by these rules, the affiant may submit the following certification. . . ." In *State v. Parmigiani,* 65 *N.J.* 154, 320 *A.*2d 161 (1974), the Court considered the purpose behind *Rule* 1:4–4(b). The Court stated that the "allowance of certifica- tion in lieu of oath was admittedly intended as a convenience but it in nowise reduced the solemnity of the verification or declaration of truth." *Id.* at 157, 320 *A.*2d 161. Thus, the policy of the Court Rule seeks to accommodate both convenience and truth. We must consider whether that policy and purpose serve to inform the legislative intent in the context of the statutory malpractice action that calls for the submission of an affidavit of merit.

The Court Rule authorizing a certification does not directly apply to or govern malpractice actions brought under the statute. The commentary to the rule states: "As a cautionary note, the limitation of the scope of paragraph (b) to affidavits, oaths and verifications required by the rules calls attention to the fact that *the rule does not apply to documents required exclusively by a statute* which does not incorporate court rules." Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 1:4–4(b) (1996) (emphasis

added); *cf. Matthews v. Deane*, 196 *N.J.Super.* 428, 437, 483 *A.*2d 224 (Ch.Div.1984) (rejecting the application of *Rule* 1:4–4(b) to a statutory oath requirement for petition circulators), *appeal dismissed*, 206 *N.J.Super.* 608, 503 *A.*2d 376 (App.Div.1986).

The Affidavit of Merit Bill is the exclusive authority governing the document to be filed. The statute requires the professional malpractice plaintiff to "provide each defendant with an *affidavit* of an appropriate licensed person. . . ." *N.J.S.A.* 2A:53A–27 (emphasis added). For the purposes of the statute, then, *Rule* 1:4–4(b) itself does not authorize a malpractice plaintiff to submit a certification instead of an affidavit.

Nevertheless, the provision for the filing of an affidavit of merit under the statute imposes a pleading requirement and, in that sense, it is similar to the kind of pleading requirements that are subject to *Rule* 1:4–4(b). It is reasonable to conclude that when the Legislature enacts a cause of action that includes requirements that are procedural as well as substantive, prevailing practices under very similar judicial procedures could influence the interpretation and application of the statutory procedures. Hence, the policy and practices under *Rule* 1:4–4(b), though not directly applicable, are instructive in understanding the intended application of the procedures prescribed by the Affidavit of Merit Bill. A purpose of the statute's requirement of a threshold showing of merit by affidavit is the need for the solemnity of the truth. As long as that important criterion—truthfulness—is satisfied, the submission of a certificate instead of an affidavit may not always and necessarily violate the Affidavit of Merit Bill.

The only exception to the affidavit requirement of the statute, *N.J.S.A.* 2A:53A–27, is in the statute itself, which authorizes a "sworn statement in lieu of the affidavit" if the "defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit. . . ." *N.J.S.A.* 2A:53A–28. No other exception to the affidavit requirement appears in the statute.

In the Governor's News Release, the Affidavit of Merit Bill is entitled "Certificate of Merit." Office of the Governor, *News Release* 1 (June 29, 1995). The description of the statute in the News Release, however, clearly refers to the required filing as an "affidavit." *N.J.S.A.* 2A:53A–27. Neither party argues that the term "certificate" used in the Governor's News Release is evidence of a legislative intent to allow certification to satisfy the affidavit requirement. Nevertheless, it does not follow that the Legislature intended that under no circumstances could the filing of a certification satisfy the statutory requirement or, stated differently, that the filing of a certificate instead of an affidavit would always constitute a fatal failure of compliance mandating the dismissal of the action.

 Courts invoke the doctrine of substantial compliance to "avoid technical defeats of valid claims." *Zamel v. Port of New York Authority,* 56 *N.J.* 1, 6, 264 *A.*2d 201 (1970). In *Zamel,* the plaintiffs had failed to comply with the notice of claim requirement. *Id.* at 5, 264 *A.*2d 201. The plaintiffs had, however, informally communicated to the defendant all the information required in a formal notice of claim. *Id.* at 6–7, 264 *A.*2d 201. The Court applied the doctrine of substantial compliance, finding "nothing whatever in the pertinent statutory history or terminology to indicate that [the] Legislature ever meant to exclude the highly just doctrine of substantial compliance...." *Id.* at 6, 264 *A.*2d 201. Because the defendants were not prejudiced by the plaintiffs' failure to comply strictly and the defendants had the relevant information, the Court ruled the plaintiffs were in substantial compliance with the notice of claim requirement. *Id.* at 6–7, 264 *A.*2d 201.

 The doctrine of substantial compliance requires that the defaulting party show the following:

(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

[*Bernstein v. Board of Trustees of Teachers' Pension & Annuity Fund,* 151 *N.J.Super.* 71, 76–77, 376 *A.*2d 563 (App.Div.1977).]

Despite the Legislature's clear language requiring an affidavit, there is nothing reflective in the objectives of the Affidavit of Merit Bill or its history that suggests the Legislature intended to foreclose the familiar doctrine of substantial compliance in the affidavit of merit context.

In light of the doctrine of substantial compliance, which requires reasonable effectuation of the statute's purpose, as in *Zamel*, and the existing practices in this general area that attempt to reconcile convenience and truth under *Rule* 1:4–4(b), there is no reason to infer that the Legislature intended that the statute be applied literally and strictly, rather than in a manner that would assure substantial compliance with its essential provisions. Thus, we recognize that, under certain circumstances, a certification could satisfy the purpose of the affidavit requirement as well as the general purpose of the statute. Those circumstances would also include at the very least the timely filing of a certification otherwise complying with all of the specifications for an affidavit of merit; an adequate and reasonable justification and a convincing explanation of just cause and excusable neglect for submitting a certification rather than an affidavit; and, further, that the adverse party was not prejudiced and obtained the requisite notice in that the certification contained the quality and level of information contemplated by the affidavit requirement. Further, a relevant circumstance would involve the plaintiff undertaking prompt measures to comply fully with the statute, including specifically the filing of an affidavit or the agreement of an adversary that the certification provided fully meets the substantive requirements of the statute. We determine that under such circumstances, the statutory requirement for the affidavit of merit would be deemed to have been met by the initial filing of a certification instead of an affidavit of merit.

## IV

The Appellate Division also ruled that the contents of the certification were deficient. 303 *N.J.Super.* at 88, 696 *A.*2d 65.

The appellate court reasoned that *N.J.S.A.* 2A:53A–27 requires that the affidavit itself state that the affiant has expertise in the area involved in the action and that the professional being sued failed to comply with acceptable professional standards. *Id.* at 88–89, 696 *A.*2d 65. Here, the affiant's professional qualifications were missing from the certification. *Id.* at 89, 696 *A.*2d 65. Furthermore, the court stated that it "question[ed], but need not decide, whether Ms. Donato was an 'appropriate [neutral] person' who may execute an affidavit of merit." *Id.* at 90, 696 *A.*2d 65.

█ The issue of what information must be included in the affidavit of merit is one of statutory construction. Again, we are enjoined to examine "the provisions of the legislative enactment to ascertain whether they are expressed in plain language that, in accordance with ordinary meaning, clearly and unambiguously yields only one interpretation." *Richard's Auto City, supra,* 140 *N.J.* at 531, 659 *A.*2d 1360.

█ The statutory language here is clear and unambiguous. *N.J.S.A.* 2A:53A–27 states that the plaintiff shall provide "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." That language is the only part of the statute detailing what must be included in the affidavit. Separately, the statute lists the affiant's qualifications as mandatory requirements, but the statute does not describe those requirements as information that must be included in the affidavit. *See ibid.* ("[T]he person executing the affidavit *shall be* licensed . . . ; *have* particular expertise in the general area or specialty involved. . . . The person *shall have* no financial interest. . . .") (emphasis added). Interpreting the statute to mean that those qualifications must be included in the affidavit as the Appellate Division did goes beyond the statutory language itself.

■ We must also consider whether the "literal interpretation of individual statutory terms or provisions ... would be inconsistent with the overall purpose of the statute." *Young, supra,* 141 *N.J.* at 25, 660 *A.*2d 1153. The overall purpose of the statute is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." *In re Petition of Hall,* 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997). The construction of the Affidavit of Merit Bill that does not require the inclusion of the affiant's qualifications does not thwart the statute's basic purpose because the affiant, under penalty of law, still must affirm in the affidavit that the conduct at issue constitutes malpractice and thus is not meritless. That initial "threshold showing" of a meritorious claim is what the statute requires of the affidavit of merit. A description of the affiant's qualifications can, of course, and perhaps as a matter of sound practice should, be included in the affidavit itself. But the description can also be presented in conjunction with the affidavit (rather than in the affidavit itself) so that the defendant can evaluate the qualifications and develop any challenges accordingly, consistent with the purpose of the Affidavit of Merit Bill.

## V

■ The Law Division dismissed defendant's counterclaim with prejudice because of her failure to comply with the Affidavit of Merit Bill. The Appellate Division, agreeing with the trial court that dismissal with prejudice was appropriate, affirmed that disposition. 303 *N.J.Super.* at 91, 696 *A.*2d 65. The appellate court reasoned that the legislative intent behind the statute was to eliminate groundless malpractice filings and that allowing repeated filings after a dismissal without prejudice would be " 'manifestly repugnant' to the legislative intent and to the sensibilities of [the] court." *Id.* at 90–91, 696 *A.*2d 65. We hold that a dismissal for failure to comply with the statute should be with prejudice in all but extraordinary circumstances.

"A judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'" *Velasquez v. Franz,* 123 *N.J.* 498, 507, 589 *A.*2d 143 (1991) (quoting *Gambocz v. Yelencsics,* 468 *F.*2d 837 (3d Cir.1972)). Such a dismissal "concludes the rights of the parties as if the suit had been prosecuted to final adjudication adverse to the plaintiff." *Mayflower Indus. v. Thor Corp.,* 17 *N.J.Super.* 505, 509, 86 *A.*2d 293 (Ch.Div.), *appeal dismissed,* 20 *N.J.Super.* 39, 89 *A.*2d 277 (App.Div.1952). In contrast, a dismissal without prejudice "generally indicate[s] that 'there has been no adjudication on the merits of the claim, and that a subsequent complaint alleging the same cause of action will not be barred simply by reason of its prior dismissal.'" *Velasquez, supra,* 123 *N.J.* at 509, 589 *A.*2d 143 (quoting *Mason v. Nabisco Brands, Inc.,* 233 *N.J.Super.* 263, 267, 558 *A.*2d 851 (App.Div.1989)); *Woodward–Clyde Consultants v. Chemical & Pollution Sciences, Inc.,* 105 *N.J.* 464, 472, 523 *A.*2d 131 (1987); *see also* Pressler, *supra,* comment 1 on *R.* 4:37–1 ("It is, of course, clear that a dismissal without prejudice adjudicates nothing and does not itself constitute a bar to reinstitution of the action.").

Generally, a dismissal that is "on the merits" of a claim is with prejudice, but a dismissal that is "based on a court's procedural inability to consider a case" is without prejudice. *Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 *N.J.* 398, 415–16, 591 *A.*2d 592 (1991); *Tsibikas v. Morrof,* 5 *N.J.Super.* 306, 310, 68 *A.*2d 889 (App.Div.1949). The Rules of Court provide guidance on when a dismissal should be with prejudice: "Unless the order of dismissal otherwise specifies, a dismissal under *R.* 4:37–2(b) or (c) and any dismissal not specifically provided for by *R.* 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits." *R.* 4:37–2(d); [3] *see Woodward–Clyde, supra,*

---

[3] *Rule* 4:37–2(b) applies generally to involuntary dismissals at trial; *Rule* 4:37–2(c) applies to involuntary dismissals at trial for claims for contribution; *Rule*

105 *N.J.* at 471, 523 *A.*2d 131 (explaining application of *Rule* 4:37–2(d)).

For the violation of a court rule or order, the "decision whether to dismiss with or without prejudice is reposed in the sound discretion of the trial court under Rule 4:37–2(a)." *Crispin v. Volkswagenwerk, A.G.*, 96 *N.J.* 336, 346, 476 *A.*2d 250 (1984). Dismissals for those reasons, however, are usually without prejudice unless the court determines that the non-delinquent party has suffered irremediable prejudice. *Id.* at 345, 476 *A.*2d 250; *Connors v. Sexton Studios, Inc.*, 270 *N.J.Super.* 390, 393, 637 *A.*2d 232 (App.Div.1994). Thus, under given circumstances, a dismissal for failure to answer interrogatories does not warrant a dismissal with prejudice, *Zaccardi v. Becker*, 88 *N.J.* 245, 250–51, 440 *A.*2d 1329 (1982), a dismissal for failure to comply with the entire controversy doctrine is not an adjudication on the merits and thus is a dismissal without prejudice, *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 142 *N.J.* 336, 347, 662 *A.*2d 536 (1995), and a dismissal for mootness is not an adjudication on the merits and thus does not bar a future claim, *Transamerica Ins. Co. v. National Roofing, Inc.*, 108 *N.J.* 59, 64, 527 *A.*2d 864 (1987).

The Affidavit of Merit Bill provides that "[i]f the plaintiff fails to provide an affidavit or a statement in lieu thereof … it shall be deemed a failure to state a cause of action." *N.J.S.A.* 2A:53A–29. A dismissal pursuant to the Affidavit of Merit Bill does not fall within the exceptions to the general rule of a dismissal with prejudice under the Rules of Court because a dismissal for "failure to state a cause of action" is not a dismissal provided for by *Rule* 4:37 nor is it a jurisdictional dismissal. *See R.* 4:37–2(d). A dismissal for failure to submit an affidavit of merit is a violation of a statute rather than a court-imposed rule or order. The violation giving rise to the dismissal goes to the heart of the cause of action as defined by the Legislature.

---

4:37 also covers voluntary dismissals, *R.* 4:37–1, and involuntary dismissal for failure to comply with a rule or order, *R.* 4:37–2(a).

*Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, 563 *A.*2d 31 (1989), is consistent with the conclusion that a dismissal for failure to comply with the statute is with prejudice. In *Printing Mart–Morristown*, a printing business sued a customer and competitors alleging intentional interference with prospective economic relations and defamation. *Id.* at 744, 563 *A.*2d 31. In reviewing the defendants' motion to dismiss under *Rule* 4:6–2(e) for failure to state a claim on which relief may be granted, the Court carefully analyzed the law to determine if a cause of action was "suggested" in the complaint. *Id.* at 746, 563 *A.*2d 31. The Court concluded its analysis with the following:

> The importance of today's decision lies ... in its signal to trial courts to approach with great caution applications for dismissal under *Rule* 4:6–2(e) for failure of a complaint to state a claim on which relief may be granted.... If a complaint must be dismissed after it has been accorded the kind of meticulous and indulgent examination counselled in this opinion, then, barring any other impediment such as a statute of limitations, the *dismissal should be without prejudice to a plaintiff's filing of an amended complaint.*
>
> [*Id.* at 771–72, 563 *A.*2d 31 (emphasis added).]

Because the complaint at issue in *Printing Mart–Morristown* did meet the test for stating a claim under *Rule* 4:6–2(e), the Court reversed the dismissal of the claim. *Id.* at 772, 563 *A.*2d 31. Defendant claims that a dismissal under the Affidavit of Merit Bill is similar to a dismissal for failure to state a claim on which relief may be granted and should thus be without prejudice.

In *Velasquez v. Franz, supra,* the Court decided whether a dismissal in federal court based on the defendant's lack of capacity to be sued barred a subsequent filing of the identical claim in state court. 123 *N.J.* at 500, 589 *A.*2d 143. The Court focused its analysis on whether the dismissal in federal court constituted an adjudication on the merits warranting *res judicata* effect in state court. *Id.* at 507–11, 589 *A.*2d 143. The dismissal in federal court because of the defendant's lack of capacity to be sued was based on *Federal Rule of Civil Procedure* 12(b)(6)—failure to state a claim on which relief can be granted. *Id.* at 507, 589 *A.*2d 143. The Court referred to that ground for dismissal as "a dismissal based on a failure to state a cause of action" and quoted the

United States Supreme Court in saying that such a dismissal " 'would be on the merits, not for want of jurisdiction.' " *Id.* at 509, 589 *A.*2d 143 (quoting *Bell v. Hood,* 327 *U.S.* 678, 682, 66 *S.Ct.* 773, 776, 90 *L.Ed.* 939, 943 (1946)). Thus, this Court held that the federal court dismissal was "deemed an adjudication on the merits for *res judicata* purposes." *Id.* at 511, 589 *A.*2d 143.

The conclusion in *Printing Mart–Morristown, supra,* that a dismissal for failure to state a claim should be "without prejudice *to a plaintiff's filing of an amended complaint,*" 116 *N.J.* at 772, 563 *A.*2d 31 (emphasis added), takes on added significance in light of the conclusion in *Velasquez, supra,* that a dismissal for failure to state a claim is an adjudication on the merits entitled to *res judicata* effect. 123 *N.J.* at 511, 589 *A.*2d 143. Like the dismissal addressed in *Velasquez,* a dismissal under the Affidavit of Merit Bill involves a failure to comply with the statute that the plaintiff cannot cure merely by amending the complaint. Non-compliance does not inhere in the complaint but in the failure to satisfy the essential, collateral affidavit requirement. The plaintiff would be prohibited by *res judicata* based on the Court's ruling in *Velasquez* from filing a new but identical claim.

We have recognized that when a plaintiff fails to comply with a statute that creates a cause of action with both substantive and procedural requirements, consistent with imputed legislative intent, a dismissal for failure to comply with procedural requirements should be with prejudice unless there are "extraordinary circumstances." In *Hartsfield v. Fantini,* 149 *N.J.* 611, 695 *A.*2d 259 (1997), and the companion case *Wallace v. JFK Hartwyck at Oak Tree, Inc.,* 149 *N.J.* 605, 695 *A.*2d 257 (1997), the Court considered a statute mandating automobile arbitration, *N.J.S.A.* 39:6A–24 to –35, that required that a motion for a trial *de novo* be filed within thirty days and that the failure to file within that time period would result in dismissal of any future court actions. *Hartsfield, supra,* 149 *N.J.* at 615, 695 *A.*2d 259. The Court held that, despite the language of the statute, a late motion would be

permitted if the failure to file within thirty days was due to "extraordinary circumstances." *Id.* at 618, 695 *A.*2d 259.

We perceive no basis for not imputing a similar legislative intent in the enactment of the Affidavit of Merit Bill. We conclude that a dismissal under the statute based on a violation of the affidavit requirement would be without prejudice only if there are extraordinary circumstances. Absent extraordinary circumstances, a failure to comply with the statute that requires a dismissal would be with prejudice.

## VI

For the first time defendant raises before this Court constitutional objections to the statute. Only in respect of important matters of public concern will an appellate court consider issues not raised below. *Churchdale Leasing, supra,* 115 *N.J.* at 100, 557 *A.*2d 277; *A. & B. Auto Stores, supra,* 59 *N.J.* at 20, 279 *A.*2d 693. On the record before us and with the disposition of this case determined by the effective date clause of the statute, we do not need to decide defendant's constitutional claims.

We note in passing, however, that it does not appear that defendant's challenges to the statute based on equal protection and due process are substantial. Equal protection poses no threat to the statute as the affidavit of merit requirement is a rational and reasonable requirement imposed by the Legislature and is likely to assist in the objective of reducing frivolous lawsuits. *Cf. Whitaker v. DeVilla,* 147 *N.J.* 341, 357–58, 687 *A.*2d 738 (1997) (applying same test to uphold the constitutionality of New Jersey's "deemer" statute, *N.J.S.A.* 17:28–1.4); *Barone v. Department of Human Servs.,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987) (reviewing *Greenberg v. Kimmelman,* 99 *N.J.* 552, 567, 494 *A.*2d 294 (1985), and New Jersey's equal protection jurisprudence). Likewise, it is evident that due process considerations of vagueness do not threaten the statute's validity. *Cf. In re Loans of N.J. Property Liability Ins. Guar. Ass'n,* 124 *N.J.* 69, 78, 590 *A.*2d 210 (1991) (discussing that civil statutes are subject to less stringent scrutiny

for vagueness); *Painter v. Painter*, 65 *N.J.* 196, 208, 320 *A.*2d 484 (1974) (describing vagueness doctrine as guarding against arbitrary results).

█ Similarly, the constitutional principle of separation of powers in this context is not implicated. It is within the Legislature's authority to define a cause of action to include a limitations period within which the plaintiff must act. *See, e.g., E.A. Williams, Inc. v. Russo Development Corp.*, 82 *N.J.* 160, 164–67, 411 *A.*2d 697 (1980) (discussing reasons behind Legislature's enacting such a statute). Furthermore, the Legislature's choice to require the affidavit of merit is in no way incompatible with this Court's rules regarding malpractice suits and will not interfere with the judiciary's role in resolving such disputes. *Cf. Knight v. City of Margate*, 86 *N.J.* 374, 394–95, 431 *A.*2d 833 (1981) (holding that Court may accommodate legislation that does not interfere with judicial authority).

Those observations suggest that the constitutional issues in this case do not generate significant and imperative issues of public concern and, accordingly, we find it unnecessary and inappropriate to deal conclusively with those issues.

## VII

We perceive that the Affidavit of Merit Bill was intended by the Legislature to serve salutary purposes in assuring the adjudication of meritorious professional malpractice claims and, properly applied, in advancing the cause of justice.

We reverse the judgment of the Appellate Division and set aside the Law Division's dismissal of defendant's counterclaim.

*For reversal*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.