950 A.2d 918 (2008)
401 N.J. Super. 310
IN the Matter of the Appeal by EARLE ASPHALT COMPANY.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2008.
Decided June 30, 2008.
*920 Steven E. Brawer, Roseland, argued the cause for appellant Earle Asphalt Company (Lowenstein Sandler, attorneys; Mr. Brawer, of counsel and on the brief; Michael T.G. Long and Kristin A. Muir, on the brief).
Susan R. Roop, Assistant Attorney General, argued the cause for respondent Department of the Treasury (Anne Milgram, Attorney General, attorney; Ms. Roop, of counsel and on the brief; Kimberly A. Sked, Deputy Attorney General, on the brief).
Noah Bronkesh, Newark, argued the cause for respondent Arawak Paving Company (Sills, Cummis & Gross, attorneys; Mr. Bronkesh, of counsel and on the brief; Kenneth F. Oettle, on the brief).
Before Judges SKILLMAN, WINKELSTEIN and LeWINN.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal presents a challenge to the constitutionality of a 2005 amendment to the Campaign Contributions and Expenditure Reporting Act, L. 2005, c. 51 (Chapter 51), which prohibits any state agency from awarding a contract with a value over $17,500 to a business entity that has contributed more than $300 during the preceding eighteen months to the Governor, a candidate for Governor or any State or county political party committee. The contractor who brings this challenge made a contribution to a county political committee that would subject the contractor to disqualification from the award of any state contract, but then attempted to avail itself of a section of Chapter 51 that provides an exemption from the disqualification to a contractor who receives reimbursement of a contribution within thirty days. We conclude that Chapter 51 is constitutional and that the Department of Treasury properly rejected the contractor's claim to an exemption from the disqualification because, even though the contractor undertook steps to obtain reimbursement of its disqualifying contribution within thirty days, it did not receive reimbursement within that period.

I
Appellant Earle Asphalt is engaged in the road construction business. One of its sources of business is state highway construction projects.
In June 2007, former State Senate President John Bennett solicited Walter Earle, *921 II, the president of the appellant company, for a contribution to the Monmouth County Republican Committee (Republican Committee) in exchange for tickets to an August 1, 2007 cocktail party. Earle agreed to make the contribution, and on June 30, 2007, appellant purchased three tickets for $1,500. The Republican Committee cashed appellant's check on July 6, 2007.
On July 18, 2007, T. Robin Visconi, a fundraiser for the Republican Committee, solicited Earle for an additional $2,500 contribution for the same event. Visconi suggested that Earle make the check payable to the election fund of an individual candidate in order to avoid conflict with "pay-to-play" laws.
After reading Visconi's note, Earle became concerned about the company's initial $1,500 contribution. Consequently, he asked his general counsel for an opinion. The general counsel informed Earle that the June 30 contribution was potentially disqualifying. On July 20, 2007, Earle telephoned Bennett to request a refund of the $1,500 contribution.
Earle alleges that he called Bennett multiple times to inquire about the status of the refund, and Bennett alleges that he contacted various Republican Committee officials to expedite the refund. On August 10, 2007, twenty-one days after Earle's initial refund request to Bennett and forty-one days after the $1,500 contribution, the Republican Committee issued appellant a refund check for $1,500. Bennett attributed the delay in refund of the contribution to "several layers of individuals that were involved[,]" noting that the Republican Committee "does not have a full time Treasurer nor a full time fundraiser."
Thereafter, appellant submitted a bid to the New Jersey Department of Transportation (DOT) for the award of a contract for roadwork on a section of Interstate 195. After the DOT notified appellant that it had submitted the low bid and was therefore entitled to award of the contract, appellant submitted to the Department of Treasury the "Contractor Certification and Disclosure of Political Contributions" form required under Chapter 51. This form disclosed the June 30, 2007 contribution appellant had made to the Republican Committee.
On January 23, 2008, the Department of Treasury informed appellant that, following a review by the Chapter 51 Review Unit, it was found to be disqualified from award of the Interstate 195 contract. That same day, appellant's counsel sent a letter to the Acting Director of the Division of Purchase & Property within the Treasury Department requesting her to restore appellant's eligibility because it had promptly requested a refund of the contribution and received the refund shortly thereafter.
In a February 4, 2008 letter, the Acting Director declined appellant's request for reinstatement. The Acting Director concluded that it was clear on the face of the statute establishing the exemption from the Chapter 51 disqualification that "the refund must be received within 30 days of the contribution[,]" and that "although the request for reimbursement was arguably made by Earle within the 30-day timeframe, the actual refund was not received . . . until approximately ten days after the 30-day period expired."
Appellant attempted to appeal the Acting Director's decision to the Acting Treasurer. However, the Acting Director notified appellant by letter dated February 6, 2008 that the Acting Treasurer had delegated authority to her to render a final decision and that she found "no basis to overturn [her] prior decision."
*922 Appellant filed a notice of appeal from the Acting Director's final decision and moved for an emergent stay pending the outcome of the appeal. We granted appellant's motion for a stay and accelerated the appeal.
Thereafter, appellant filed a motion to supplement the record with certifications from Walter Earle, II, former Senator Bennett and Michael Lombardi, who is appellant's General Counsel. We now grant the motion and have considered the Earle, Bennett and Lombardi certifications in reviewing this appeal.
On appeal, appellant argues that Chapter 51 violates its constitutional rights of free speech and association. Appellant also argues that even if Chapter 51 is constitutional, its request for return of the contribution to the Republican Committee entitled it to the statutory exemption from the disqualification from bidding on State contracts afforded when reimbursement of a contribution is received within thirty days.

II
We first address appellant's argument that Chapter 51 violates its rights of free speech and association protected by the First Amendment of the United States Constitution.[1] The State argues that we should not consider this argument because appellant did not challenge the constitutionality of Chapter 51 in the proceedings before the Treasury Department resulting in its disqualification from bidding on State contracts. However, an administrative agency does not have jurisdiction to rule upon a facial challenge to the constitutionality of the statute under which it operates. See Abbott v. Burke, 100 N.J. 269, 299, 495 A.2d 376 (1985); Stubaus v. Whitman, 339 N.J.Super. 38, 62, 770 A.2d 1222 (App.Div.2001), certif. denied, 171 N.J. 442, 794 A.2d 181 (2002); see also Johnson v. Robison, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389, 398 (1974) (noting that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies"). Therefore, Earle's claim that Chapter 51 violates its constitutional rights to free speech and association is properly before us even though it is raised for the first time on appeal.
Statutes limiting political contributions are considered to raise more substantial questions of freedom of association than of speech because "[t]he quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing." Buckley v. Valeo, 424 U.S. 1, 21, 96 S.Ct. 612, 635, 46 L.Ed.2d 659, 689 (1976). For this reason, "a contribution limitation surviving a claim of associational abridgement would survive a speech challenge as well[.]" Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 388, 120 S.Ct. 897, 904, 145 L.Ed.2d 886, 899 (2000). Therefore, the alleged abridgment of the right of political association is the focus of any First Amendment challenge to the validity of a statute that limits political contributions. See McConnell v. Fed. Election Comm'n, 540 U.S. 93, 135, 124 S.Ct. 619, 656, 157 L.Ed.2d 491, 543 *923 (2003); Nixon, supra, 528 U.S. at 388, 120 S.Ct. at 904-05, 145 L.Ed.2d at 898-99.
"[W]hen reviewing Congress' decision to enact contribution limits, `there is no place for a strong presumption against constitutionality, of the sort often thought to accompany the words "strict scrutiny."'" McConnell, supra, 540 U.S. at 137, 124 S.Ct. at 656, 157 L.Ed.2d at 544 (quoting Nixon, supra, 528 U.S. at 400, 120 S.Ct. at 911, 145 L.Ed.2d at 906 (Breyer, J., concurring)). Instead, a statute limiting political contributions will be sustained "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." Buckley, supra, 424 U.S. at 25, 96 S.Ct. at 638, 46 L.Ed.2d at 691.
The primary governmental interest served by a statutory limitation on contributions to political candidates and parties is "to limit the actuality and appearance of corruption resulting from large individual financial contributions[.]" Id. at 26, 96 S.Ct. at 638, 46 L.Ed.2d at 692. The Court has recognized that "[t]o the extent that large contributions are given to secure political quid pro quo's from current and potential office holders, the integrity of our system of representative democracy is undermined." Id. at 26-27, 96 S.Ct. at 638, 46 L.Ed.2d at 692. The Court has also recognized that "[o]f almost equal concern as the danger of actual quid pro quo arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions." Id. at 27, 96 S.Ct. at 638-39, 46 L.Ed.2d at 692; see also Nixon, supra, 528 U.S. at 388, 120 S.Ct. at 905, 145 L.Ed.2d at 899.
Applying these principles, the Court in Buckley upheld the validity of a federal statute that established a $1,000 ceiling on contributions to any candidate for federal office which, subject to certain limited exceptions, applied to all potential contributors. 424 U.S. at 23, 28-29, 96 S.Ct. at 637, 639-40, 46 L.Ed.2d at 690, 693-94. The Court in Nixon upheld the validity of a state statute that imposed a $1,075 limit on individual contributions to candidates for state offices, which also applied to all potential contributors. 528 U.S. at 383, 393-97, 120 S.Ct. at 902, 907-10, 145 L.Ed. at 895, 902-04.
The Supreme Court has not addressed the constitutionality of a statute that imposes targeted limitations upon political contributions by a class of contributors considered to pose a particularly serious threat to the government's interest in preventing "the actuality and appearance of corruption resulting from large individual financial contributions[.]" Buckley, supra, 424 U.S. at 26, 96 S.Ct. at 638, 46 L.Ed.2d at 692. However, this court addressed such a statute in In re Petition of Soto, 236 N.J.Super. 303, 565 A.2d 1088 (App.Div. 1989), certif. denied, 121 N.J. 608, 583 A.2d 310, cert. denied, 496 U.S. 937, 110 S.Ct. 3216, 110 L.Ed.2d 664 (1990), which upheld the constitutionality of a section of the Casino Control Act that prohibits any officer or key employee of a casino from contributing any "money or thing of value" to a candidate for public office or to any party or group organized to support such candidates, N.J.S.A. 5:12-138. We concluded that this statute does not infringe upon the First Amendment rights of high-level casino employees even though it imposes an absolute prohibition against any political contributions rather than, as in the statutes upheld in Buckley and Nixon, a ceiling upon the amount of contributions, because of the particular threat to the integrity of State government posed by political contributions from participants in this tightly regulated industry:

*924 Given the acknowledged vulnerability of the casino industry to organized crime and the compelling interest in maintaining the public trust, not only in the casino industry but also the governmental process which so closely regulates it, there is no viable alternative available to prevent the appearance of, or actual, corruption of the political process in New Jersey. . . .
. . . .

Buckley approved the limitation on political contributions to the entire public at large throughout the United States whereas § 138 applies to only a small percentage, approximately 3.5%, of all the employees in the casino industry. Here, the prohibition under § 138 affects a relatively small percentage of persons in the casino industry who must accept the Act's imposition of restrictions and prohibitions as a condition of their employment. . . . The threat of impropriety is "particularly insidious when the concern is that casinos, with their enormous economic power, might appear to infiltrate" the governmental process.
[Soto, supra, 236 N.J.Super. at 321, 335-36, 565 A.2d 1088 (citations omitted).]
Courts in other jurisdictions have also rejected challenges to the constitutionality of statutes and administrative regulations that imposed prohibitions or strict limitations upon political contributions by companies and persons involved in businesses that pose a particular threat of the actuality or appearance of corruption of public officials. See, e.g., Blount v. SEC, 61 F.3d 938, 944-48 (D.C.Cir.1995) (Securities and Exchange Commission regulation that prohibited contributions by municipal securities professionals to campaigns of state officials from whom they obtain business); Fed. Election Comm'n v. Weinsten, 462 F.Supp. 243, 249 (S.D.N.Y.1978) (section of Federal Election Campaign Act that prohibited certain political contributions by government contractors); Gwinn v. State Ethics Comm'n, 262 Ga. 855, 426 S.E.2d 890, 892 (1993) (state statute that prohibited insurance companies from making campaign contributions to candidates for or occupants of the Office of Commissioner of Insurance); Casino Ass'n of La. v. State, 820 So.2d 494, 497-509 (La.2002) (state statute that prohibited campaign contributions by participants in casino industry).
The strong governmental interest in limiting political contributions by businesses that contract with the State is similar to the governmental interest that this court in Soto found to justify an absolute prohibition against political contributions by high-level casino employees. The nature of this governmental interest is expressed in Chapter 51's findings and declarations, which state in part:
When a person or business interest makes or solicits major contributions to obtain a contract awarded by a government agency or independent authority, this constitutes a violation of the public's trust in government and raises legitimate public concerns about whether the contract has been awarded on the basis of merit; and
. . . .
For the purposes of protecting the integrity of government contractual decisions and of improving the public's confidence in government, it is a compelling interest of this State to prohibit awarding government contracts to business entities which are also contributors to candidates, political parties and the holders of public office; and
There exists the perception that campaign contributions are often made to a State or county political party committee by an individual or business seeking favor with State elected officials, with the *925 understanding that the money given to such a committee will be transmitted to other committees in other parts of the State, or is otherwise intended to circumvent legal restrictions on the making of political contributions or gifts directly to elected State officials, thus again making elected State officials beholden to those contributors; and
County political party committees, through their powers of endorsement, fundraising, ballot slogan or party line designation, and other means, exert significant influence over the gubernatorial primary and general election process; and
. . . .
It is essential that the public have confidence that the selection of State contractors is based on merit and not on political contributions made by such contractors and it is essential that the public have trust in the processes by which taxpayer dollars are spent; and
. . . .
The Legislature must safeguard the integrity of State government procurement by imposing restrictions on State agencies and independent authorities to insulate the negotiation and award of State contracts from political contributions that pose the risk of improper influence, purchase of access, or the appearance thereof.
[N.J.S.A. 19:44A-20.13.]
To protect the State and its citizens from "the actuality or appearance" of corruption in the award of State contracts, Chapter 51 provides in pertinent part:
The State or any of its purchasing agents or agencies . . . shall not enter into an agreement or otherwise contract to procure from any business entity services or any material, supplies or equipment, . . . where the value of the transaction exceeds $17,500, if that business entity has solicited or made any contribution of money, or pledge of contribution, including in-kind contributions to a candidate committee or election fund of any candidate or holder of the public office of Governor, or to any State or county political party committee: (i) within the eighteen months immediately preceding the commencement of negotiations for the contract or agreement[.] . . .
[N.J.S.A. 19:44A-20.14.]
Chapter 51 defines a "contribution" subject to this prohibition as "a contribution reportable by the recipient under `the New Jersey Campaign and Expenditures Reporting Act,'" N.J.S.A. 19:44A-20.16, which is $300 or more, N.J.S.A. 19:44A-8(d). This prohibition applies not only to any "business entity" that contracts with the State but also to any principal who owns or controls more than 10% of such a business entity. N.J.S.A. 19:44A-20.17.
Appellant argues that Chapter 51 is not "closely drawn to avoid unnecessary abridgment of associational freedoms[,]" Buckley, supra, 424 U.S. at 25, 96 S.Ct. at 638, 46 L.Ed.2d at 691, because public bidding laws, with their own stringent anti-corruption provisions, are adequate to prevent misconduct in government contracting. However, the Court in Buckley rejected a similar argument, stating that "laws making criminal the giving and taking of bribes deal with only the most blatant and specific attempts of those with money to influence governmental action." 424 U.S. at 27-28, 96 S.Ct. at 639, 46 L.Ed.2d at 693. The Court also observed that "[n]ot only is it difficult to isolate suspect contributions but, more importantly, Congress was justified in concluding that the interest in safeguarding against the appearance of impropriety requires that the opportunity for abuse inherent in the process of raising large monetary contributions *926 be eliminated." Id. at 30, 96 S.Ct. at 640, 46 L.Ed.2d at 694. Similarly, the Court noted in Nixon:
While neither law nor morals equate all political contributions, without more, with bribes, we spoke in Buckley of the perception of corruption "inherent in a regime of large individual financial contributions" to candidates for public office as a source of concern "almost equal" to quid pro quo improbity. The public interest in countering that perception was, indeed, the entire answer to the overbreadth claim raised in the Buckley case.
[528 U.S. at 390, 120 S.Ct. at 905-06, 145 L.Ed.2d at 900 (citations omitted).]
Appellant also argues that the application of the Chapter 51 limitation upon campaign contributions to a highway contractor such as appellant is "superfluous and overreaching," because State highway contracts are competitively bid and the Commissioner of Transportation is required to award the contract to "the lowest responsible bidder." N.J.S.A. 27:7-30. However, even when contracts are competitively bid, State officials exercise substantial discretion that contractors may seek to influence through campaign contributions. For example, the Commissioner of Transportation has the authority to determine whether a contractor is "responsible," see Trap Rock Indus., Inc. v. Kohl, 59 N.J. 471, 481-86, 284 A.2d 161 (1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), whether a bid conforms to the "specifications" of the contract, N.J.S.A. 27:7-30, see Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313-14, 650 A.2d 748 (1994), and whether to reject all bids because they are "excessively above the estimated cost, or for any other cause," N.J.S.A. 27:7-30; see DGR Co. v. State, Dep't of Treasury, 361 N.J.Super. 467, 474-77, 825 A.2d 1203 (App.Div.2003). Moreover, even after a competitively bid construction contract is awarded, the Commissioner or other State contracting official may exercise substantial discretionary authority in determining whether to execute change orders and in resolving disputes concerning performance of the contract or payments to the contractor.[2]See Home Owners Constr. Co. v. Borough of Glen Rock, 34 N.J. 305, 315-16, 169 A.2d 129 (1961); Capital Safety, Inc. v. State, Div. of Bldgs. and Const., 369 N.J.Super. 295, 302-03, 848 A.2d 863 (App. Div.2004). Therefore, we reject appellant's argument that the governmental interest in preventing the actuality or appearance of public corruption does not support a limitation upon the amount of political contribution by contractors who seek the award of competitively bid contracts.
In addition, appellant argues that the $300 limit on political contributions by State contractors is so low that it threatens to inhibit effective advocacy by political candidates and parties. In support of this argument, appellant relies upon Randall v. Sorrell, 548 U.S. 230, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006), which invalidated a Vermont statute that imposed a $400 limit on contributions to a candidate for governor and an even lower limit on contributions to candidates for the state legislature. The Court in Randall noted the absence of any "special justification" for such low limits on campaign contributions. See id. at 244, 126 S.Ct. at 2489, 165 L.Ed.2d at 496. However, in this case, the particular danger that contractors' campaign contributions may influence the discretionary *927 decisions of State contracting officials or create a public perception of such influence establishes the "special justification" for the contribution limits imposed by Chapter 51 that the Court found lacking in Randall. Furthermore, since Chapter 51 only imposes limitations on campaign contributions by State government contractors and their principals, gubernatorial candidates and political committees may solicit contributions of more than $300 from any business or individual that does not engage in business with the State. For this reason, the limitation on campaign contributions imposed by Chapter 51 does not have the same capacity as the Vermont statute invalidated in Randall to prevent candidates and political parties "from `amassing the resources necessary for effective [campaign] advocacy[.]'" Id. at 248, 126 S.Ct. at 2492, 165 L.Ed.2d at 499 (quoting Buckley, supra, 424 U.S. at 21, 96 S.Ct. at 636, 46 L.Ed.2d at 689).
In sum, the State's interest in "insulat[ing] the negotiation and award of State contracts from political contributions that pose the risk of improper influence, purchase of access, or the appearance thereof[,]" N.J.S.A. 19:44A-20.13, is a "sufficiently important interest" to justify a limitation upon political contributions. Buckley, supra, 424 U.S. at 25, 96 S.Ct. at 638, 46 L.Ed.2d at 691. New Jersey's $300 limitation on contributions to gubernatorial candidates and political committees by businesses and the principals of businesses who enter into substantial State contracts constitutes a "means" of protecting this interest that is "closely drawn to avoid unnecessary abridgment of associational freedoms." Ibid. Therefore, Chapter 51 is constitutional.

III
We turn next to appellant's argument that the Acting Director erred in ruling that it was not entitled to the exemption from the disqualification from bidding on State contracts that Chapter 51 imposes upon a contractor who contributes more than $300 to a political party committee because appellant requested a return of its contribution within thirty days. The exemption provision upon which appellant relies states:
If a business entity inadvertently makes a contribution that would otherwise bar it from receiving a contract or makes a contribution during the term of a contract in violation of this act, the entity may request a full reimbursement from the recipient and, if such reimbursement is received within 30 days after the date on which the contribution was made, the business entity would again be eligible to receive a contract or would no longer be in violation, as appropriate. It shall be presumed that contributions made within 60 days of a gubernatorial primary or general election were not made inadvertently.
[N.J.S.A. 19:44A-20.20.]
Appellant acknowledges that it did not actually receive reimbursement of its contribution to the Republican Committee within thirty days. However, appellant argues that the word "received" is ambiguous and that its request for reimbursement within thirty days of the contribution should be deemed to constitute "constructive receipt" that entitles it to the exemption provided by N.J.S.A. 19:44A-20.20. Appellant also argues that its request for reimbursement within thirty days constituted "substantial compliance" with N.J.S.A. 19:44A-20.20. In addition, appellant argues that the Department of Treasury did not give "fair notice" of its interpretation of the term "received" as used in N.J.S.A. 19:44A-20.20. We reject these arguments and affirm the Acting Director's decision disqualifying appellant.
*928 "Construction of any statute necessarily begins with a consideration of its plain language." Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). "Such language should be given its ordinary meaning, absent a legislative intent to the contrary." Id. at 434-35, 599 A.2d 1256.
The ordinary meaning of "receive" is "to take into one's possession." Random House Webster's Unabridged Dictionary 1610 (2001). Thus, the term connotes obtaining actual possession of the object in question,  in this case, the refund of a political contribution.
Appellant's argument that the term "received" should be construed to mean "entitled to receive," which can be satisfied merely by a request for a refund of a political contribution, cannot be reconciled with the plain language of N.J.S.A. 19:44A-20.20. Under this section, a business entity that "inadvertently"[3] makes a disqualifying political contribution "may request a full reimbursement from the recipient[,]" but to be entitled to the exemption from disqualification, "such reimbursement [must be] received within 30 days after the date on which the contribution was made[.]" Thus, N.J.S.A. 19:44A-20.20 distinguishes between a "request" for reimbursement, which requires action by the contributor, and "receipt" of the reimbursement, which requires action by the recipient to honor the request for reimbursement, and it expressly requires the latter to occur within thirty days.
It is easy to discern reasons why the Legislature required actual receipt of the reimbursement of a disqualifying contribution within thirty days in order for the exemption to apply. A disqualifying contribution in effect constitutes an interest-free loan to the recipient for the period between the contribution and reimbursement. Moreover, if Chapter 51 did not require reimbursement of a disqualifying contribution to be actually received by the contributor within a limited period of time, the State would be deprived of the only effective means of verifying that a disqualifying contribution was actually returned.
Even if it were possible to discern some ambiguity in the term "received" as used in N.J.S.A. 19:44A-20.20, we would be obliged to defer to the interpretation of this statute by the state agencies charged with its administration because an agency's interpretation of a statute it administers "will prevail unless it is `plainly unreasonable.'" T.H. v. Div. of Dev'l Disabilities, 189 N.J. 478, 490, 916 A.2d 1025 (2007) (quoting N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 351, 696 A.2d 585 (1997)). The Election Law Enforcement Commission has adopted an administrative regulation, which provides in pertinent part:
(a) A business entity which agrees to any contract or agreement with the State . . . for the rendition of services or furnishing of any material, supplies or equipment[,] . . . if the value of the transaction exceeds $17,500, shall not knowingly solicit or make any contribution reportable by the recipient . . . to a candidate committee of any candidate or holder of the public office of Governor or to any State or county committee of a political party prior to the completion of the contract or agreement.
(b) For the purposes of (a) above, a business entity shall have knowingly made a contribution if the business entity *929 did not request, in writing, within 30 days of the date on which the contribution was made, that the recipient candidate committee of any candidate or holder of the public office of Governor or State or county committee of a political party repay the contribution and, if the business entity did not receive repayment within those 30 days.

[N.J.A.C. 19:25-24.2 (emphasis added).]
Thus, consistent with our interpretation, the Election Law Enforcement Commission has interpreted N.J.S.A. 19:44A-20.20 to require both the request for reimbursement and actual receipt of reimbursement to occur within thirty days of a disqualifying contribution. The Department of Treasury has interpreted N.J.S.A. 19:44A-20.20 in the same manner in denying appellant's claim to an exemption from the disqualification. In our view, this interpretation is not "plainly unreasonable," T.H., supra, 189 N.J. at 490, 916 A.2d 1025. To the contrary, it is the only reasonable interpretation of N.J.S.A. 19:44A-20.20.
We also reject appellant's argument that it should be allowed to invoke the doctrine of "substantial compliance" to obtain the benefit of the exemption provided by N.J.S.A. 19:44A-20.20. New Jersey courts use the doctrine of substantial compliance to avoid "harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352, 771 A.2d 1141 (2001). The elements of substantial compliance are:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not strict compliance with the statute.
[Cornblatt v. Barow, 153 N.J. 218, 239, 708 A.2d 401 (1998) (quoting Bernstein v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977)).]
Even assuming that the doctrine of substantial compliance could apply under appropriate circumstances to a claim for the exemption from Chapter 51 provided by N.J.S.A. 19:44A-20.20, appellant's request for reimbursement did not satisfy the requirements of this doctrine. Initially, we question whether the "steps taken [by appellant] to comply with [N.J.S.A. 19:44A-20.20]" were sufficient. Cornblatt, supra, 153 N.J. at 239, 708 A.2d 401. Appellant did not make a written request for a refund to the Republican Committee, as required by N.J.A.C. 19:25-24.2. Instead, appellant followed the indirect route of seeking a refund by a telephone call to the person who had solicited the contribution, former Senator Bennett, who in turn placed telephone calls to the Republican Committee requesting the refund. Moreover, even if the steps that appellant undertook to obtain the refund were considered sufficient, the request for a refund, without actual receipt of the refund, did not constitute "general compliance with the purpose of the statute." Cornblatt, supra, 153 N.J. at 239, 708 A.2d 401. As previously discussed, the exemption provided by N.J.S.A. 19:44A-20.20 can be claimed only if the contributor actually receives reimbursement within thirty days. This explicit statutory requirement cannot be circumvented by invocation of the substantial compliance doctrine.
Finally, we reject appellant's argument that it did not receive "fair notice" of the Department of Treasury's interpretation of N.J.S.A. 19:44A-20.20. In support of this argument, appellant relies *930 upon an answer to a question regarding Chapter 51 that the Department of Treasury posted on its website, which stated:
Question 97: If a prospective or current vendor made a $300 contribution to a state political party committee since October 15, 2004, can the vendor be brought into compliance with EO 134 [now PL 2005, c. 51] by requesting and obtaining a refund?
Answer: Contributions in excess of $300 dollars . . . will disqualify a vendor of eligibility for State contract awards for certain periods of time.
The law . . . allows for the return to the contributor of an inadvertent contribution, however, the return must be requested within 30 days after the contribution was made in order for the inadvertent contribution not to be treated as disqualifying.
[NJ Department of Treasury, Division of Purchase and Property, Executive Order #134, http://www.state.nj.us/ treasury/purchase/execorderQ&A.htm (Feb. 7, 2008).]
Regardless of how a person reading this answer may have understood the requirements of the exemption from disqualification provided by N.J.S.A. 19:44A-20.20, another answer posted by the Department of Treasury on the same website clearly indicated that the exemption could be claimed only if reimbursement of the disqualifying contribution was actually received within thirty days:
Question # 118: If a vendor has made an inadvertent contribution, it has been refunded, although beyond the 30 day limit that reverses disqualification, what is the exact time the vendor is not eligible for State contract awards?
Answer: . . .
First, Chapter 51 states that an inadvertent contribution may be returned to the contributor, and eligibility for State contract award restored, if the refund is obtained within thirty days of the contribution. A refund obtained more than thirty days after the date of the contribution will not restore the eligibility of the vendor.

[Ibid. (emphasis added).]
In any event, appellant does not assert that it reviewed the questions and answers on the Treasury website before seeking a refund of its disqualifying contribution through Senator Bennett. Most significantly, N.J.S.A. 19:44A-20.20 and N.J.A.C. 19:25-24.2 both clearly indicate on their face that reimbursement of a disqualifying contribution must be "received" within thirty days in order for the contributor to claim an exemption from the disqualification. Therefore, appellant received the most direct possible notice of the requirements of N.J.S.A. 19:44A-20.20  the statute itself.
Affirmed.
NOTES
[1] New Jersey courts "ordinarily interpret our State Constitution's free speech clause to be no more restrictive than the [First Amendment.]" Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264, 716 A.2d 1137 (1998). Appellant does not argue that we should construe the New Jersey Constitution to impose stricter restrictions upon statutes limiting political contributions than the United States Supreme Court has construed the First Amendment to impose.
[2] We note in this connection that the prohibition upon political contributions that Chapter 51 imposes upon bidders for State contracts also extends to the entire period of performance under a State contract. See N.J.S.A. 19:44A-20.15.
[3] The Department of Treasury has not questioned Earle's satisfaction of the requirement that a disqualifying contribution be "inadvertent" in order for a contributor to be entitled to the exemption provided by N.J.S.A. 19:44A-20.20. Consequently, we do not address this requirement.