**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0737-22

SHENISE MONK and JORDI
WILSON, on behalf of their
minor son, J.W.,

      Plaintiffs-Appellants,

v.

KENNEDY UNIVERSITY
HOSPITAL, INC., KENNEDY
UNIVERSITY HOSPITALS
MATERNAL FETAL MEDICINE,
STEPHAN HOSMER, D.O.,
SUSAN JANECZEK, D.O.,
KEITH WILLIAMS, M.D.,
SOPHIA VOGIATZIDAKIS, D.O.,
TOMAS ROTSCHILD, M.D.,
and LLOYD TINIANOW, M.D.,

      Defendants-Respondents.

_____

Argued October 10, 2023 – Decided May 3, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3527-20.

Charles L. Becker argued the cause for appellants Shenise Monk and Jordi Wilson (Kline & Specter, attorneys; Charles L. Becker, Elizabeth A. Crawford, Ruxandra Maniu Laidacker, and Michelle Anne Paznokas, on the briefs).

Andrew S. Winegar argued the cause for respondents Kennedy University Hospital, Inc., and Kennedy University Hospitals Maternal Fetal Medicine (Parker McCay, PA, attorneys; Thomas M. Walsh and Andrew S. Winegar, on the brief).

Michael Christopher Pacholski argued the cause for respondent Stephan Hosmer, D.O. (Stahl & DeLaurentis, PC, attorneys; Michael Christopher Pacholski, on the brief).

Paul Earl Peel (O'Brien & Ryan, LLP) argued the cause for respondents Susan Janeczek, D.O., Keith Williams, M.D., and Sophia Vogiatzidakis, D.O. (Paul Earl Peel, Anthony P. DeMichele (O'Brien & Ryan, LLP), and Jaime Nicole Johnson (O'Brien & Ryan, LLP), attorneys; Anthony P. DeMichele, Jaime Nicole Johnson, and Paul Earl Peel, on the brief).

Walter F. Kawalec, III, and John B. Mullahy argued the cause for respondents Tomas Rotschild, M.D., and Lloyd Tinianow, M.D. (Marshall, Dennehey, Warner, Coleman & Goggin, and Kaufman, Borgeest & Ryan, LLP, attorneys; Walter F. Kawalec, III, and John B. Mullahy, on the brief).

PER CURIAM

This matter comes before us a second time. On July 14, 2022, we reversed the trial court's denial of summary judgment to defendants and concluded the

2

A-0737-22

minority-tolling statute does not apply to extend the statute of limitations to deceased minors. See Monk v. Kennedy Univ. Hosp. Inc., 473 N.J. Super. 178 (App. Div. 2022). However, we remanded the matter to the trial court to consider plaintiffs' alternative argument that they had demonstrated substantial compliance with the statute of limitations for their claims, stating "we are mindful plaintiffs also argued they substantially complied with the applicable statutes of limitation. The trial court did not rule on this issue. We express no view about whether plaintiffs have presented a viable claim of substantial compliance but instead remand for its consideration." Id. at 189.

On remand, the trial court found plaintiffs had not substantially complied and dismissed their claims. We conclude plaintiffs failed to demonstrate sufficient evidence of any of the five prongs used to evaluate substantial compliance with the applicable statutes of limitations and affirm the trial court's order of September 23, 2022, dismissing plaintiffs' claims.

We need not reiterate the tragic underlying facts and instead incorporate the facts set forth in our July 14, 2022 opinion. Decedent, J.W., passed away on July 10, 2016, at the age of six months. More than four years later, on October 26, 2020, plaintiffs sued defendants, alleging that negligence in the mother's prenatal care and J.W.'s care caused J.W.'s death. The complaint alleged

medical malpractice, negligence, corporate negligence, and a claim pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1 to -64. Although the complaint alleged negligence and medical malpractice regarding both the mother's prenatal care and J.W.'s delivery and care at Kennedy University Hospital (Kennedy Hospital), on appeal plaintiffs conceded "[t]he instant matter is being brought on behalf of [m]inor plaintiff only." Monk, 473 N.J. Super. at 182.

"The doctrine of substantial compliance allows for the flexible application of a statute [of limitations] in appropriate circumstances." Negron v. Llarena, 156 N.J. 296, 304 (1998). "Courts invoke the doctrine of substantial compliance to 'avoid technical defeats of valid claims.'" Id. at 305 (quoting Cornblatt v. Barow, 153 N.J. 218, 239 (1998)). To toll a statute of limitations, courts examine five prongs:

> (1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of [plaintiff's] claim; and (5) a reasonable explanation why there was not strict compliance with the statute.
>
> [Berke v. Buckley Broad. Corp., 359 N.J. Super. 587, 598 (App. Div. 2003) (quoting Negron, 156 N.J. at 305).]

We have applied the doctrine of substantial compliance "to excuse an untimely filing in New Jersey where the plaintiff has filed a timely claim in a federal court

4

or the court of another state that was dismissed by that court for lack of jurisdiction and followed by a prompt filing in New Jersey." Schmidt v. Celgene Corp., 425 N.J. Super. 600, 609-10 (2012).

In Estate of Vida ex rel. Kesciova v. City of Garfield, 330 N.J. Super. 225, 227-31 (App. Div. 2000), the plaintiff timely filed a complaint in state court alleging negligence in the death of a man who was pepper sprayed by police but sought to substitute a John Doe defendant with the manufacturer of the pepper spray after the expiration of the statute of limitations. We concluded the plaintiff demonstrated substantial compliance, explaining:

> Twelve days before the expiration of the statute of limitations, [d]efense was informed of the existence and nature of plaintiff's claim against it. Defense cannot claim prejudice due to plaintiff's failure to file the necessary motion to amend the complaint quicker than it did; it knew within the time required by statute of the claim. Furthermore, plaintiff's reliance on the efforts of the City's attorney to obtain the information concerning the identity of the manufacturer and distributor of the pepper spray was not altogether unreasonable. Both plaintiff and the City had an interest in identifying this party. Moreover, the information was received within the limitations period and plaintiff immediately took action to notify [d]efense of the existence of the claim.
>
> [Id. at 230-31.]

In contrast, we have concluded the doctrine of substantial compliance inapplicable where a plaintiff did not take any action to file a claim within the limitations period, Bernoskie v. Zarinsky, 344 N.J. Super. 160, 166 (App. Div. 2001), or where a plaintiff did not re-file in state court within a reasonable time after dismissal from federal court, see Binder v. Price Waterhouse & Co., 393 N.J. Super. 304, 312 (App. Div. 2007) (plaintiff waited eight months after dismissal to file in state court "only to have it dismissed for lack of prosecution and had to re-file . . . over one year after the dismissal of the federal action"); Troum v. Newark Beth Israel Med. Ctr., 338 N.J. Super. 1, 26 (App. Div. 2001) (plaintiff's claim "was renewed only after the lapse of a substantial period of time").

Here, plaintiffs argue the two-year statute of limitations should be tolled by application of the substantial compliance doctrine. However, the record contains few facts or assertions of fact addressing the five prongs. Instead, plaintiffs reiterate their mistaken belief that minority tolling applied, and they had until 2029 to file a wrongful death action. Indeed, the record demonstrates plaintiffs did not even seek estate administration papers for J.W. until after the two-year statute of limitations had lapsed. For the reasons stated in our published opinion, plaintiffs' reliance on minority tolling for a minor decedent

was in error and cannot establish a basis for substantial compliance with the statute. We generally do not countenance ignorance of the law as a reason to relax statutory or procedural deadlines. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 156 (2013) (refusing to recognize ignorance of the law as an extraordinary circumstance for tort claims act purposes); Gonzalez v. Ibrahim, 477 N.J. Super. 647, 658 (App. Div. 2024) (noting ignorance of the law is not an extraordinary circumstance for affidavit of merit purposes); Balthazar v. Atl. City Med. Ctr., 358 N.J. Super. 13, 25-26 (App. Div. 2003); see also State v. Jackson, 454 N.J. Super. 284, 295 n.6 (App. Div. 2018).

Plaintiffs also argue they took appropriate steps to comply with the statute of limitations by retaining counsel while J.W. was still alive and collecting medical records. They allege defendants did not suffer any prejudice because plaintiffs' request for medical records "should have placed defendants on notice that J.W. or his guardians might assert a potential malpractice action."

We disagree. Plaintiffs did not take any action to file their claims within the limitations period. They filed their first complaint two years after the expiration of the limitations period. Although plaintiffs claim they "worked to collect the relevant medical records and obtain the requisite expert support" once J.W. passed, they do not cite to any caselaw stating such action constitutes "a

A-0737-22

series of steps" to comply with the statute of limitations. Moreover, plaintiffs do not support their argument with assertions of fact in certifications, affidavits, or their counterstatement of facts, except for the following statement in defense counsel's certification: "this is a complicated medical negligence action with months of medical records that takes months and years to obtain all the medical records and obtain expert support."

Furthermore, nothing in the record suggests defendants had notice of plaintiffs' claims before the expiration of the limitations period. To the contrary, plaintiffs conceded defendants "were unaware that J.W. died until the filing of the Complaint." Plaintiffs instead state defendants should have been on "reasonable" notice of a claim because their attorney called the hospital requesting medical records within the two-year statute of limitations period. The attorney did not send a letter or anything that can remotely be considered a notice of claim. There are many reasons why hospital records may be sought, even by an attorney. Furthermore, the evidence presented does not certify whom the attorney spoke with, when the call occurred, or any other fact.

Plaintiffs' final argument is that their delay in filing is reasonably explained because obtaining sufficient evidence to file the complaint and then "obtain[ing] the requisite expert support" to meet the sixty-day deadline to file

8

an affidavit of merit took a significant amount of time. That argument fails for two reasons. First, plaintiffs do not actually assert they lacked sufficient evidence to timely file their complaint. Beyond stating that Kennedy Hospital did not produce certain key records until the summer of 2020, after plaintiffs' counsel became aware they were missing that spring, plaintiffs offer little sense of what they did not know regarding defendants' allegedly negligent conduct prior to the expiration of the limitations period that precluded the filing of their claims. This is so despite their admission they retained counsel prior to J.W.'s death.

Second, if such evidence was necessary to obtain an affidavit of merit, it could have been obtained after the timely filing the complaint. Plaintiffs had sixty-days from the filing of an answer to serve an affidavit of merit but could have obtained an additional period of sixty-days on good cause shown. N.J.S.A. 2A:53A-27. Plaintiffs can and "should begin discovery promptly [after the filing of the complaint] when facts are needed to comply with the requirements of the Affidavit of Merit statute," and may do so "with court intervention if necessary . . . ." Fink v. Thompson, 167 N.J. 551, 564 (2001). Finally, plaintiffs' argument would make compliance with statute of limitations in all complex medical malpractice actions discretionary.

9

For the aforementioned reasons, plaintiffs failed to demonstrate substantial compliance with the statute of limitations. Rather, the record demonstrates plaintiffs simply did not comply with the two-year statute of limitations because they believed minority tolling applied and they had until 2029 to file a complaint.

Plaintiffs argue the court erred in its analysis and incorrectly applied substantial compliance as an elements test, requiring proof of all five prongs. Plaintiffs contend the applicable caselaw does not support an elements test but rather a factors test. They also argue a bright-line rule requiring a party meet all five prongs would defy the very spirit of the "equitable" substantial compliance doctrine.

Defendants argue the equitable nature of the doctrine does not make the prongs variable. Instead, New Jersey courts have balanced the equities and concluded evidence demonstrating all five prongs of the substantial compliance doctrine constitute the minimum showing necessary to overlook strict application of the statutes of limitations on equitable grounds. Defendants argue both the Supreme Court and this court have repeatedly applied the prongs as an elements test. Additionally, courts have rejected substantial compliance in cases where a party failed to meet one or more prongs. Specifically, in In re Earle

Asphalt Co., the court declined to engage in further analysis after two prongs were not met, 401 N.J. Super. 310, 328-30 (App. Div. 2008); and in Sroczynski v. Milek, the Supreme Court rejected the substantial compliance application after finding two prongs were not met, 197 N.J. 36, 43-44 (2008). See also Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 152 (2003) (explaining plaintiff did not demonstrate substantial compliance despite "satisf[ying] most of the factors").

We need not reach the issue of whether an elements test or a factors test is the appropriate standard because plaintiffs fail to show compliance with any of the prongs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11